Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| JOSÉ ORTIZ COSME | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores, Bayamón |
|---|---|---|
| Peticionario | | |
| V. | KLCE202400429 | Caso Núm.: BY2019RF01023 (3001) |
| XAVIANA MOLINA FONSECA | | |
| Recurrida | | Sobre: ALIMENTOS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de febrero de 2025.

Ante nosotros comparece el señor José Ortiz Cosme mediante recurso de certiorari. En este nos solicita la revocación de cierta Resolución y Orden emitida por el Tribunal de Primera Instancia y en la cual se le impuso la obligación de pagar quince mil dólares ($15,000.00) como gastos de litigio y mil dólares ($1,000.00) por concepto de honorarios de abogado.

Los hechos esenciales para comprender la determinación que hoy tomamos los exponemos a continuación.

**I.**

Las partes en este recurso comparecen a este tribunal por segunda ocasión. La primera vez, el señor Ortiz Cosme compareció el 29 de septiembre de 2023 solicitándonos la revisión de la cuantía impuesta contra este por el foro primario en el pleito de alimentos de su hija. En dicha ocasión, el Tribunal de Primera Instancia había impuesto la cuantía de treinta y un mil seiscientos veinticinco dólares ($31,625.00) por concepto de gastos del litigio y mil dólares ($1,000.00) en concepto de honorarios de abogado por la celebración de cierta vista evidenciaria. Ortiz Cosme recurrió ante nosotros encontrando tal

cantidad una excesiva e irrazonable y aduciendo no estar en posición económica para cubrirla, entre otros argumentos. Así las cosas, el 30 de noviembre de 2023, encontramos que, en efecto, la cuantía impuesta era irrazonable. Confirmamos la obligación del Ortiz Cosme de pagar los gastos del litigio y honorarios, pero devolvimos al foro recurrido para que impusiese una cantidad razonable, al margen de los criterios establecidos en el Canon 24 del Código de Ética Profesional. Así lo ha hecho el foro primario reduciendo la cuantía a satisfacer a quince mil dólares ($15,000.00) en gastos del litigio, más mil dólares ($1,000.00) por concepto de honorarios de abogado.

Aun inconforme, el señor Ortiz Cosme ha comparecido nuevamente ante nosotros entendiendo que la cuantía aún sigue siendo una irrazonable al margen del Canon 24 de Responsabilidad Profesional. Para el señor Ortiz Cosme, la recurrida, señora Xaviana Molina Fonseca, no presentó prueba que justificara tal cuantía en términos de credibilidad o valor probatorio. Además, considera un factor a considerar, en su beneficio, el hecho de que fue él mismo quien radicó la petición de fijación de una pensión alimentaria.

Para la más cabal comprensión de este asunto, transcribimos los hechos según reseñados en el recurso KLCE202301084, pues son los mismos hechos que generan esta controversia.

El 17 de diciembre de 2016, las partes acordaron extrajudicialmente el pago de una pensión alimentaria para beneficio de su hija menor de edad. Ambos acordaron que el peticionario pagaría cincuenta dólares ($50.00) semanales por concepto de hogar seguro y doscientos dólares ($200.00) semanales de pensión alimentaria para un pago total de doscientos cincuenta dólares ($250.00) semanales. El padre se responsabilizó por los gastos médicos de la menor, debido a que la madre pagaba el plan médico. Véase, pág. 24 del apéndice de la oposición.

El 2 de diciembre de 2019, el peticionario solicitó al TPI que estableciera la pensión conforme a la ley. Sostuvo que entre las partes habían acordado voluntariamente una pensión de mil dólares ($1,000.00) mensuales, que satisfacía a razón de doscientos cincuenta ($250.00) semanales. No obstante, en aquellos periodos de cinco (5) semanas, pagaba entonces doscientos cincuenta dólares ($250.00) más, en adición al plan médico y los deducibles de los gastos médicos.[1]

Al otro día, el 3 de diciembre, la Examinadora de Pensiones Alimentarias (EPA) emitió una Orden en la cual exigió a ambas partes presentar sus Planillas de Información Personal y Económica (PIPE), acompañada de la evidencia de sus ingresos y de los gastos que en beneficio de la menor reclamaran. Señaló el 13 de diciembre de 2019, como la fecha en la cual la documentación debía estar disponible y **la fecha de la vista para el 18 de diciembre**. El 16 de diciembre, Ortiz Cosme presentó su PIPE.[2]

El 16 de diciembre, la madre, señora Molina Fonseca, compareció al foro por derecho propio. Explicó que había hecho las gestiones para conseguir representación legal a través de Pro-Bono y Servicios Legales de Puerto Rico, pero que, a la fecha de la vista señalada, una de las abogadas no podía comparecer por una condición de salud y otra se encontraba de vacaciones. Por tales razones solicitó un reseñalamiento. Ortiz Cosme se opuso al reseñalamiento de la vista.

Aun así, el 18 de diciembre se celebró la vista entre las partes, a pesar de la objeción de Molina Fonseca por encontrarse sin representación legal. Allí y, conforme la PIPE presentada por el peticionario, se le adjudicó un ingreso neto mensual de dos mil cuatrocientos sesenta y ocho dólares ($2,468.00) a Ortiz Cosme y se le imputó uno de dos mil ciento veinticinco dólares ($2,125.00) a Molina

---

[1] Véase entrada número 1 del Sistema Unificado de Manejo y Administración de Casos, en adelante SUMAC.

[2] Véase entrada número 12 SUMAC.

Fonseca. Conforme al testimonio juramentado de esta última se establecieron los gastos de la menor en dos mil ciento veinticinco dólares ($2,125.00) y se recomendó una pensión alimentaria de quinientos sesenta y ocho dólares con dos centavos ($568.02) mensuales, doscientos ochenta y cuatro dólares ($284.00) quincenales, desglosados en quinientos catorce dólares con veintiocho centavos ($514.28), de pensión básica y cincuenta y tres dólares con setenta y cinco centavos ($53.75), como pensión suplementaria (aportación a la vivienda). Ante la inconformidad de Molina Fonseca, las partes acordaron una pensión de ochocientos dólares ($800.00) mensuales o ciento ochenta y cuatro dólares y sesenta y dos centavos ($184.62) semanales, así como una responsabilidad del demandante de un cincuenta y cuatro por ciento (54%) en todas las necesidades de la menor. No se consideró el gasto por educación, toda vez que, según Ortiz Cosme, no se le preguntó, mucho menos consintió a que la menor se educara bajo el programa de "Home Schooling". Molina Fonseca se haría cargo del plan médico de la menor a partir de enero del 2020. Hay que resaltar que la menor objeto de la pensión es diabética tipo 1 y dependiente de insulina, por lo que requiere unos cuidados médicos recurrentes. Todo gasto médico no cubierto por el plan médico sería sufragado por las partes, aportando Ortiz Cosme el cincuenta y cuatro por ciento (54%), previa presentación de evidencia, mediante reembolso en quince (15) días. Finalmente se calendarizaron varias fechas importantes en el proceso; el 21 de enero de 2020 como el último día para notificar descubrimiento de prueba y, Molina Fonseca informar quién le representaría; el 21 de marzo de 2020 para concluir el descubrimiento de prueba; el 9 de abril de 2020 el último día para las partes atender objeciones al descubrimiento, si alguno; intercambiar la prueba documental que interesaran presentar en la vista final y

anunciar prueba testifical, si alguna, y el 23 de abril del 2019[3], a las 2:00 pm, sería la vista final.[4]

El 27 de diciembre de 2019 asumió la representación legal de Molina Fonseca la licenciada Chrisired Morales Negrón.

El 30 de diciembre, Ortiz Cosme presentó una moción al foro primario para que se declarara incursa en desacato a Molina Fonseca por no haber presentado su PIPE. Además, pidió se le ordenara no discutir asuntos del caso con la menor ni hablarlos en presencia de ella; y cumplir con las gestiones del plan médico en beneficio de esta, conforme lo estipulado por las partes durante la vista. Ese mismo día, la abogada de Ortiz Cosme presentó una moción para que el tribunal adviniera en conocimiento de una situación de intimidación en su contra en el estacionamiento del tribunal.

El 31 de diciembre, el TPI autorizó la representación legal de Molina Fonseca y concedió un término de treinta (30) días para contestar cualquier moción. Por último, limitó el descubrimiento de prueba a sesenta (60) días.

El 9 de enero de 2020, el TPI concedió cinco (5) días a Molina Fonseca para presentar la PIPE y prohibió a las partes hablar sobre las incidencias judiciales o permitir que alguien lo hiciese al frente de la menor. Además, ordenó a las partes mantener el decoro y respeto en este caso, evitando hacer comentarios innecesarios a la otra parte o los abogados. Al día siguiente, Molina Fonseca sometió su PIPE.

El 21 de enero de 2020, Ortiz Cosme solicitó se encontrara en desacato a Molina Fonseca, toda vez que, a pesar de haber acordado que ella tramitaría un plan médico para la menor, no lo había hecho, pues se había retractado de lo acordado en la vista entre las partes. El

---

[3] Asumimos que dicha la fecha de 23 de abril del 2019 es un error tipográfico que realmente se refiere al 23 de abril de 2020.
[4] Véase, entrada número 14 y 19 SUMAC.

TPI recordó a las partes los acuerdos alcanzados y recabó el cumplimiento.

El 20 de enero de 2020, Molina Fonseca informó haber enviado el Primer Pliego de Interrogatorio y Solicitud de Producción de Documentos junto a un Requerimiento de Admisiones. El 4 de febrero, la representación legal de Molina Fonseca confirmó haber orientado a su clienta, a pesar de esta negar haber incurrido en conducta impropia en el estacionamiento del tribunal, sobre su responsabilidad de observar una conducta caracterizada por el respeto, la honradez y diligencia, tanto con los funcionarios del Tribunal como con las partes litigantes en el caso y/o sus abogados. Añadió que las acusaciones de la representante legal de Ortiz Cosme podrían acarrear una violación al Canon 22 de los que rigen la profesión de la abogacía. Solicitó que de repetirse la conducta de la abogada del peticionario se descalificara como representante legal.[5] El 7 de febrero de 2020, el TPI ordenó a las partes actuar con el decoro que requieren las Reglas. Encontró que de las alegaciones no surgía conducta que ameritase descalificar a ningún abogado en el caso. Efectuó un llamado a las partes, y sobre todo a los abogados, como funcionarios del Tribunal, a mantener una relación de cordialidad y no abonar a las controversias del caso.

Así las cosas, las partes se enfrascaron en un intercambio de mociones sobre el cumplimiento de Molina Fonseca con la gestión de un plan médico para beneficio de la menor. El 4 de febrero de 2020, Molina Fonseca indicó que, desde el 31 de diciembre de 2019, gestionó la cubierta médica para la menor habida entre las partes y la misma era efectiva desde el 1 de enero de 2020. El 14 del mismo mes, Ortiz Cosme indicaba que no se había efectuado el cambio y seguían debitándole de su cuenta dicho gasto. Tuvo que el foro ordenar la

---

[5] Véase entrada número 35 SUMAC.

prueba de gestión, para que Molina Fonseca aceptara haber malinformado al tribunal, por un alegado desconocimiento.

El 9 de septiembre de 2020, Molina Fonseca solicitó la imposición del desacato contra Ortiz Cosme, por un atraso en el pago de la pensión. Dos (2) días después solicitó que se diera por admitido el requerimiento de admisiones, toda vez que no se había contestado en el término reglamentario. El 24 de septiembre, la licenciada Chrisired Morales Negrón renunció a la representación legal de Molina Fonseca, ante la imposibilidad de atender a sus hijos durante la pandemia y el cumplimiento de sus obligaciones con su clienta. El 5 de noviembre, la licenciada Michelle M. Acosta Rodríguez, de Servicios Legales, asumió la representación legal de Molina Fonseca.

El 7 de julio de 2021, Ortiz Cosme solicitó al TPI la correspondiente vista final para darle continuidad a los asuntos pendientes en el mismo. El TPI señaló **vista mediante teleconferencia para el 25 de octubre de 2021**, a las 1:30pm. Así las cosas, el 11 de agosto, la nueva representación legal de Molina Fonseca notificó haber enviado a Ortiz Cosme, Primer Pliego de Interrogatorio y Requerimiento de Producción de Documentos en relación con la vista de alimentos señalada para el 25 de octubre.

El 19 de agosto de 2021, Molina Fonseca le recordó al foro que continuaba pendiente de adjudicación su solicitud de que se diera por admitido el requerimiento de admisiones y que se encontrara a Ortiz Cosme incurso en desacato por una deuda de pensión alimentaria. El 7 de septiembre, Molina Fonseca volvió a recabar la ayuda del foro, en esta ocasión, para el reembolso de noventa dólares con cuarenta y tres centavos ($90.43), correspondientes a gastos médicos de la menor, específicamente tirillas y sensores para tratar la condición de diabetes, de los cuales a Ortiz Cosme le corresponde el cincuenta y cuatro por ciento (54%) de los gastos médicos no cubiertos por el plan. El 29 de septiembre, Ortiz Cosme se opuso a un descubrimiento de prueba

tardío y reclamó haber cuadrado la supuesta deuda con la representación legal anterior de Molina Fonseca. Esta última se opuso a la conclusión del descubrimiento de prueba aduciendo que la supuesta objeción de Ortiz Cosme era una tardía. Eventualmente, el foro primario ordenó a Ortiz Cosme contestar el interrogatorio y dio por admitido el requerimiento de admisiones. Concedió veinte (20) días a Ortiz Cosme para expresarse sobre la alegada deuda de pensión por mil setenta y nueve dólares con cincuenta centavos ($1,079.50).

El 19 de octubre de 2021, la representación de Molina Fonseca advirtió que, estando tan cerca la fecha de la vista final y tomando en consideración que Ortiz Cosme no había contestado el interrogatorio ni había producido documento alguno, se debía cambiar la vista a una de estatus. El día después, Ortiz Cosme se opuso, suplicó al tribunal no autorizar reabrir un descubrimiento de prueba que, para él, había vencido hacía casi dos (2) años, no permitir el nuevo Interrogatorio cursado por la parte demandada y no dar por admitido el requerimiento de admisiones por ser dichas solicitudes a destiempo y no conforme a derecho ni a la realidad fáctica. El 21 de octubre, Molina Fonseca solicitó que se le ordenara a Ortiz Cosme contestar el interrogatorio y producir los documentos requeridos el 11 de agosto de 2021; pidió una prórroga de veinte (20) días para contestar el interrogatorio y requerimiento de producción de documentos cursado por la parte demandante y que se convirtiese la vista a una de estado de los procedimientos. El TPI ordenó contestar el descubrimiento.

El 24 de noviembre de 2021, Molina Fonseca presentó una moción al TPI reconociendo que ninguna de las partes se había cursado las contestaciones a los interrogatorios y requerimiento de producción de documentos junto con los anejos. Además, señaló que se suponía que se sometiera a la Examinadora de Pensiones Alimentarias la prueba documental a ser presentada en la vista cinco (5) días antes y la PIPE enmendada, diez (10) días antes y no se ha podido hacer. El

tribunal señaló la vista final sobre alimentos del 1 de diciembre a las 2:30 p.m., a una sobre estado de los procedimientos.

El 29 de noviembre, Ortiz Cosme presentó una moción al tribunal cuestionando ciertos gastos médicos que Molina Fonseca le reclamaba por no corresponder a la menor. Un día después presentó otra moción para solicitar al tribunal diera por admitido el requerimiento de admisiones y el interrogatorio cursado a Molina Fonseca por no contestar los mismos. El 30 de noviembre, Molina Fonseca presentó, no una sino dos mociones, aduciendo haberlos contestado y replicando que Ortiz Cosme no había hecho lo mismo. Así también presentó una tercera moción aduciendo que el gasto de las tirillas era real y suponía un problema entre las partes todos los meses, por estar sujeto a una acción de reembolso que no sucedía. En su cuarta moción del 30 de noviembre, Molina Fonseca solicitó una orden del tribunal para que Ortiz Cosme presentara la Forma 480, evidencia que la corporación paga la vivienda, Anejo M de planilla con evidencia de ingresos y gastos y contestara el Interrogatorio y requerimiento de admisiones. Por su parte, Ortiz Cosme replicó aduciendo que se solicitaban documentos fuera de término, con el objetivo de lograr la suspensión de la vista, y seguir dilatando los procedimientos. Que esto no le convenía a Ortiz Cosme, pues estaba pagando una pensión mayor a la cual debía imponerse. Por tal razón, se oponía a la conversión de la vista final a una de estatus.

Finalmente, el 30 de noviembre, Molina Fonseca presentó la contestación al requerimiento de admisiones. Eventualmente, el TPI reseñaló la vista para el 11 de enero de 2022.

El 1 de diciembre de 2021 se llevó a cabo la vista que se suponía fuera la vista final de pensión alimentaria. Ambas partes fueron con representación legal. Partieron de la premisa que se había fijado una pensión alimentaria provisional de ochocientos dólares ($800.00) mensuales efectiva al 2 de diciembre de 2019. Ortiz Cosme señaló que

estaría asumiendo capacidad económica de los gastos razonables de la menor, por lo que el tribunal les concedió unos momentos para discutir una posible estipulación de la pensión. Al no llegar a un acuerdo, Molina Fonseca solicitó un término de tiempo para la presentación de evidencia de gastos y Ortiz Cosme sugirió establecer la pensión de quinientos sesenta y ocho dólares con dos centavos ($568.02) mensual, que resultaba de las guías mandatorias resultante de la vista celebrada ante la Examinadora de Pensiones Alimenticias, Lcda. Nereida Salvá Sandoval, celebrada el 18 de diciembre de 2019. En la alternativa, aceptó capacidad económica para sufragar los gastos de la menor. Molina Fonseca no tuvo objeción a que se fijase como pensión alimentaria provisional, la suma de quinientos sesenta y ocho dólares con dos centavos ($568.02). Ante lo solicitado por Ortiz Cosme de que se fijase como pensión alimentaria provisional la suma de quinientos sesenta y ocho dólares con dos centavos ($568.02), así como lo solicitado por Molina Fonseca de que se le proveyese un término para recopilar la evidencia de los gastos de la menor y no tener objeción a la cuantía de la pensión alimentaria provisional, la Examinadora la fijó como tal. Se le concedió quince (15) días a Molina Fonseca para presentar la contestación al interrogatorio, las planillas de contribución sobre ingresos correspondiente a los años contributivos 2019 y 2020, el requerimiento de documentos, estados de cuenta correspondiente a los años 2019 y 2020, así como la evidencia de los gastos. Ortiz Cosme expresaría entonces al Tribunal en o antes del 30 de diciembre del año 2021, si en efecto, asumiría capacidad económica y de no hacerlo, tendría hasta el 12 de enero de 2022 para presentar la siguiente documentación: contestación al interrogatorio cursado, la planilla de contribución correspondiente al año contributivo 2020, el formulario 480, el anejo M de la planilla de la cual surge evidencia de los gastos y evidencia de que hay una corporación que paga su lugar de residencia. **Recapitulando, el descubrimiento de prueba relacionado a Ortiz**

**Cosme se pospuso, toda vez que este representó que podría asumir capacidad económica.**

El 16 de diciembre de 2021, Ortiz Cosme presentó una moción al tribunal para informar que Molina Fonseca no había presentado, a pesar de haberse obligado durante la vista, la contestación al interrogatorio, las planillas de contribución sobre ingresos correspondiente a los años contributivos 2019 y 2020, el requerimiento de documentos, estados de cuenta correspondientes a los años 2019 y 2020, así como evidencia de los gastos de la menor. El mismo día, Molina Fonseca informó haber enviado el primer pliego de interrogatorio y requerimiento de producción de documentos. Mediante otra moción en la misma fecha trajo a la atención del tribunal que la abogada de Ortiz Cosme se negaba a recibir los documentos. El 20 de diciembre, Ortiz Cosme compareció para desmentir las alegaciones de Molina Fonseca y reiterar que esta trataba de dilatar la fijación de la pensión final; que aún no había cumplido con la entrega de la información y que pretendía entregar información incompleta y parcial.

El 29 de diciembre, Ortiz Cosme reiteró que la información entregada por Molina Fonseca era incompleta e incumplía con lo ordenado por el tribunal. Solicitó un término para evaluar si asumía capacidad económica, toda vez que entendía que Molina Fonseca pretendía seguir dilatando los procesos. El 14 de enero de 2022, Molina Fonseca explicó al foro que había entregado ciertos documentos y otros como, los estados de cuenta, necesitaba que Ortiz Cosme asumiera el costo por ascender a seiscientos dólares ($600.00).

El 24 de enero de 2022, la licenciada Michelle M. Acosta Rodríguez solicitó el relevo de representación legal con carácter de urgencia por diferencias irreconciliables de criterio con Molina Fonseca. Señaló que Molina Fonseca le había informado que se representaría por derecho propio. En otra moción informó haber presentado toda la prueba documental necesaria para la vista del 31 de enero. En una

tercera moción acompañó los nombres de los testigos que utilizaría en la vista para que el tribunal los invitara a conectarse a la misma. El 26 de enero, la licenciada Michelle M. Acosta Rodríguez insistió en que se le relevara de la representación legal. Tomando en consideración que Molina Fonseca presentó la prueba a escasos días de la vista, la EPA recalendarizó la vista del 31 de enero para el jueves, 24 de marzo de 2022 a las 9:30 a.m. mediante videoconferencia. Finalmente, el 3 de enero, el TPI relevó a la licenciada Michelle M. Acosta Rodríguez de la representación legal de Molina Fonseca e instó a esta última a cumplir con las órdenes de la EPA e informar al tribunal.

El 3 de febrero, Ortiz Cosme solicitó la suspensión de la vista de estatus del día siguiente. Así fue concedido por el foro primario, señalando vista de estatus para el 16 de mayo de 2022 y le concedió treinta (30) días a Molina Fonseca para anunciar nueva representación legal.

El 7 de febrero de 2022, Molina Fonseca, por derecho propio, presentó ante el tribunal una moción solicitando que Ortiz Cosme cumpliera con la decisión de aceptar capacidad económica o no. Esto, toda vez que, ya ella había enviado toda la documentación necesaria para que este considerara su postura. Aseveró que la menor estaba pasando necesidades, que Ortiz Cosme no cumplía con el cincuenta y cuatro por ciento (54%) de los gastos médicos, le hablaba mal a la menor de su mamá y le adeudaba dinero por concepto de pensión alimentaria.

El 15 de febrero, Ortiz Cosme solicitó la imposición de sanciones económicas contra Molina Fonseca por dilatar los procesos al incumplir crasamente con el descubrimiento de prueba, ante su temeridad crasa al descubrimiento de prueba y se fijasen honorarios de abogado a su favor.

El 24 de febrero de 2022, Molina Fonseca, por derecho propio, desmintió las alegaciones de entorpecimiento de los procesos en su

contra. Señaló al tribunal que todavía Ortiz Cosme no cumplía con su deber de contestar los interrogatorios y permitir el descubrimiento de prueba. Advirtió que la afectada era la menor por sus condiciones de salud. Por último, arguyó que Ortiz Cosme había alegado que aceptaría capacidad económica, una vez ella presentara la prueba de los gastos y, ya habiendo sido presentada, correspondía que este decidiera.

El 28 de febrero de 2022, la licenciada Melba Acosta, abogada de Ortiz Cosme solicitó se le relevara de la representación legal, toda vez que había aceptado un nombramiento en el gobierno como Fiscal Auxiliar.

El 3 de marzo de 2022, Molina Fonseca nuevamente volvió a suplicar al tribunal que no permitiera la dilatación de los procesos de parte de Ortiz Cosme. Compartió al tribunal que la menor tenía unas nuevas condiciones de salud que requerían la visita a médicos especialistas y Ortiz Cosme todavía no asumía el pago desde el 2019 de los gastos médicos. Esto a pesar de que ostentaba un estilo de vida lujoso. A raíz de lo cual, el 11 de marzo, el TPI le dio una Orden a Ortiz Cosme a cumplir en cinco (5) días para exponer las razones por las cuales no había cumplido con las órdenes del foro. A su vez, relevó a la licenciada Melba Acosta de la representación legal.

El 21 de marzo, la licenciada Melba C. Ramos Acosta solicitó representar a Ortiz Cosme. El 23 de marzo, Molina Fonseca, por derecho propio, recalcó la falta de cumplimiento de Ortiz Cosme con el descubrimiento de prueba, con la pensión y con su oferta de aceptar capacidad económica. Reiteró que había cumplido con todo lo ordenado por el tribunal. Repitió que la condición de la menor continuaba deteriorándose, sin que Ortiz Cosme cumpliera con su obligación, acumulando una deuda sustancial.

Aceptada la representación legal de la licenciada Melba Ramos a favor de Ortiz Cosme, esta solicitó la transferencia de la vista por conflicto en su calendario. Ese mismo día, Ortiz Cosme señaló al

tribunal que Molina Fonseca no había cumplido aún con lo ordenado por el tribunal, por lo cual él no podía decidir si asumía capacidad económica. Insistió en que Molina Fonseca debía producir los Estados de Cuenta. A raíz de dicha moción, el TPI ordenó a Molina Fonseca a cumplir con lo ordenado para culminar el descubrimiento de prueba y refirió el asunto ante la EPA.

A pesar de haberse reservado para el 24 de marzo de 2022, la vista de determinación de pensión final, no se puedo llevar a cabo. Molina Fonseca solicitó que se aumentara la pensión a ochocientos dólares ($800.00), toda vez que la pensión de quinientos sesenta y ocho dólares con dos centavos ($568.02) mensual no era suficiente para cubrir los gastos de la menor. **La EPA rechazó la petición, aduciendo que Ortiz Cosme había aceptado capacidad económica, por lo que había que pasar prueba de los gastos.** Molina Fonseca reiteró que era oneroso pagar seiscientos dólares ($600.00) por los Estados de Cuenta. Ortiz Cosme insistió en que se actualizara el estado de salud de la menor y se produjeran los estados de cuenta. Finalmente se acordó que la vista final para la fijación de la pensión alimentaria sería el 4 de mayo de 2022; Molina Fonseca debía actualizar la PIPE y los gastos de la menor; Molina Fonseca presentaría una propuesta de cuantía de la pensión alimentaria a la Lcda. Melba Ramos Aponte, antes del 8 de abril de 2022; y, en igual fecha, concluiría el descubrimiento de prueba.

El 1 de abril de 2022, Ortiz Cosme volvió a solicitar que Molina Fonseca contestara el Interrogatorio y produjera documentos, incluyendo los estados de cuenta del banco, de tarjetas de crédito y Planillas de Hacienda. Reclamó no poder decidir si asumiría capacidad económica hasta que esta proveyera dicha información.

El 4 de abril, el TPI ordenó a Molina Fonseca cumplir con el descubrimiento de prueba y advirtió que la advertencia a Molina Fonseca no era óbice para no entregar la PIPE.

El 18 de abril, Ortiz Cosme advirtió al tribunal que no podía presentar la PIPE hasta que Molina Fonseca cumpliera con el descubrimiento, toda vez que aún no descartaba asumir capacidad económica. El TPI rechazó su argumento, debiendo presentar su PIPE.

El 20 de febrero, Ortiz Cosme suplicó al tribunal hiciera cumplir su orden a Molina Fonseca para que informara nueva representación legal. Advirtió que Molina Fonseca no había cumplido la orden y continuaba radicando y enviando correos electrónicos, solicitando se le enviaran copia de escritos que se habían radicado y, de los cuales se le había enviado copia y que incluso debió haber recibido copia a través de SUMAC.

El 25 de abril, Molina Fonseca señaló al TPI que aún no encontraba representación legal, entre otros asuntos. El 26 de abril, el foro primario concedió diez (10) días a Ortiz Cosme para exponer razones por las cuales no debía citar a vista de desacato o en la alternativa presentase evidencia de pago.

El 2 de mayo de 2022, finalmente, el Estudio Legal López Mulero asumió la representación legal de Molina Fonseca. El 4 de mayo presento moción solicitando al foro la aplicación de la Regla 8.1 de Procedimiento Civil para revisar y presentar su posición en cuanto a una Moción de Ortiz Cosme, en donde reclamaba haber pagado varios gastos médicos. El 4 de mayo, Ortiz Cosme presentó su PIPE. Al día siguiente, el TPI concedió quince (15) días a Molina Fonseca para exponer sobre los argumentos del demandante.

A la vista del 4 de mayo de 2022 comparecieron las representaciones, pero Molina Fonseca no pudo comparecer, pues la menor estaba convaleciendo. Ambas abogadas solicitaron la vista se convirtiera en una de estatus de los procedimientos. Ortiz Cosme insistió en que Molina Fonseca debió completar el descubrimiento de prueba. La representación legal de esta insistió en que la producción de todos los estados era onerosa para Molina Fonseca por su condición

económica, sostuvo que podía presentar los últimos dieciocho (18) estados, pues el banco no cobraba por estos. Ambas representantes legales descartaron llegar a un acuerdo entre las partes sobre la cuantía de la pensión. Finalmente, la vista final de pensión alimentaria quedó pautada para el 13 de junio de 2022.

El 12 de mayo de 2022, Molina Fonseca señaló, mediante moción, que Ortiz Cosme no cumplía con la frecuencia y/o cantidad establecida como pensión alimentaria provisional. Señaló que el caso iba a cumplir tres (3) años ante el tribunal y aún estaba con una pensión alimentaria provisional desproporcionada, tomando en consideración los gastos y necesidades de la menor. Sostuvo que era inaceptable que, a estas alturas, Ortiz Cosme insistiera en negar diagnósticos de la menor o los cuestionara con el propósito de evadir su responsabilidad de alimentar o cumplir a medias con su obligación, lo cual era sinónimo de incumplimiento y negligencia. Señaló que Molina Fonseca había presentado documentación suficiente para evidenciar su situación económica y los gastos de la menor. Advirtió que Ortiz Cosme había condicionado su aceptación a la oferta cursada el 8 de abril de 2022, a prueba adicional solicitada el 11 de mayo de 2022. Puntualizó que Ortiz Cosme nunca contestó el Interrogatorio ni documento alguno, pues estratégicamente fundamentó su incumplimiento en una alegación de capacidad económica en la Vista del 24 de marzo de 2022, razón por la que Molina Fonseca no insistió en el descubrimiento de prueba que le fue cursado a Ortiz Cosme. Insistió en que Ortiz Cosme entorpeció el descubrimiento de prueba, incumplió con la Orden para que se descubriera lo solicitado y continuaba dilatando innecesariamente el proceso, en total menosprecio del mejor bienestar y seguridad de su propia hija menor de edad. Por tal razón, enfatizó que actuaba con temeridad en el transcurso del pleito y no había tenido consecuencias que castigaran su conducta. Molina Fonseca reiteró que Ortiz Cosme insistía en

reclamar evidencia que no existía, era remota, resultaba impertinente o era sumamente onerosa, lo cual se le había expresado en más de una ocasión y había sido parte de lo informado en la pasada vista del 4 de mayo de 2022 ante la EPA, Lcda. Diana Ifarraguerri. Correctamente planteó que Ortiz Cosme se había amparado en la alegada necesidad de unos estados bancarios para justificar su inacción. Llamó la atención a que, del acta de la vista del 24 de marzo de 2022, Ortiz Cosme informó asumir capacidad económica, por lo que el descubrimiento de prueba debía limitarse a los gastos de la menor y no a los ingresos o aspectos económicos de Molina Fonseca. Enfatizó que Ortiz Cosme llevaba incumpliendo con el pago de los gastos médicos desde el 2019, a sabiendas de la Orden emitida por el Tribunal, del diagnóstico de diabetes Tipo I de la menor desde los 9 meses y de que el plan médico no cubría el costo de las visitas a la endocrinóloga pediátrica, entre otros gastos, que le habían sido informados. Molina Fonseca enfatizó que Ortiz Cosme ni siquiera suplía el plan médico de la menor. Señaló la irracionabilidad de que Ortiz Cosme alegara no estar en posición de aceptar, rechazar o presentar una contra oferta de la propuesta de pensión alimentaria, con el fin de continuar dilatando los procedimientos y aumentar los costos del litigio. Afirmó que ya Ortiz Cosme ha sido informado de todos los gastos de la menor y contaba con los elementos necesarios para fijar su posición al respecto. Para Molina Fonseca, la conducta de este representaba una burla a la justicia e iba en total detrimento del mejor bienestar de la menor, del principio de economía procesal y los intereses de la demandada, por lo que se solicitó una Orden para proteger a Molina Fonseca del hostigamiento continuo u opresión indebida ejercida por el demandante. Solicitó se le encontrara incurso en desacato y se le ordenara el pago de los gastos médicos adeudados inmediatamente; realizar el pago de la pensión alimentaria de forma mensual los días primero (1ro.) de cada mes; que, en un término perentorio de cinco (5)

días, indicara su posición sobre la oferta cursada el 8 de abril de 2022 y de no aceptar la misma, hiciera una contraoferta en cinco (5) días, so pena de desacato y/o severas sanciones; y el pago de una suma no menor de dos mil quinientos dólares ($2,500.00) en concepto de honorarios de abogado por temeridad.

En igual fecha, Molina Fonseca, mediante otra moción, planteó al tribunal la necesidad de imponer a Ortiz Cosme el pago por concepto de escuela, toda vez que la menor ya no recibiría Homeschooling y deseaba asistir a la Bayamón Military Academy.

El 16 de mayo se celebró una vista sobre estado de los procedimientos. Molina Fonseca reiteró su petición de gastos escolares y que Ortiz Cosme había asumido capacidad económica. Por su parte, Ortiz Cosme lo negó. El TPI concedió diez (10) días a las partes para resolver el asunto de la escuela; veinte (20) días para completar el descubrimiento de prueba; **si Ortiz Cosme interesaba los estados financieros de Molina Fonseca debía pagarlos** y, por último, este contaba con diez (10) días para pagar cualquier deuda pendiente.

El 24 de mayo, Ortiz Cosme sugirió las siguientes alternativas escolares; Colegio Otoquí Bilingual School; Escuela Elemental Francisco "Paquito" López Cruz y Escuela de Segunda Unidad Julián Marrero. Además, informó que, en varios días, estaría pagando la totalidad de su deuda.

El 25 de mayo, Molina Fonseca confirmo estar de acuerdo con la selección de Ortiz Cosme en cuanto al Colegio Otoquí, por lo que le pidió al tribunal que le impusiera a este el cincuenta y cuatro por ciento (54%) de los gastos del regreso a la escuela. En cuanto al pago de la deuda reclamó no haber recibido el mismo y, por último, reiteró su petición de honorarios por temeridad ante la conducta desplegada por el demandante y conforme al Art. 22 de la Ley Núm. 5-1986, según enmendada.

El 26 de mayo, el TPI autorizó a la demandada a matricular a la menor en el Colegio Otoquí y se ordenó al demandante a asumir el cincuenta y cuatro por ciento (54%) de los gastos relacionados al regreso a clases. Ese mismo día, Molina Fonseca, mediante moción, solicitó al foro que ordenara el pago de los gastos de regreso a la escuela por adelantado, en vez de por reembolso, toda vez que Molina Fonseca no contaba con los recursos para pagarlos en su totalidad. Aclaró que la deuda ascendía a cuatro mil doscientos noventa dólares con cincuenta y un centavos ($4,290.51). Reiteró su solicitud de honorarios por temeridad, basados en la conducta litigiosa de Ortiz Cosme.

El 8 de junio de 2022, la representación legal de Ortiz Cosme solicitó la transferencia de la vista del 13 de junio por problemas de salud de su progenitor. Así lo concedió el foro señalando nueva fecha para el 13 de julio de 2022, a la 1:30 p.m., mediante videoconferencia. La Examinadora de Pensiones Alimentarias les advirtió a las partes que la PIPE debía ser completada y sometida antes de la vista, de no haberse presentado previamente y que toda evidencia que no hubiese sido compartida entre las partes antes del señalamiento sería declarada inadmisible en la vista de alimentos. Además, les apercibió de someter oportunamente cualquier controversia sobre el alcance y cumplimiento del descubrimiento de prueba a la atención del Juez de Sala, para que el asunto estuviese resuelto para el día de la vista.

El 15 de junio de 2022, Ortiz Cosme presentó *Moción Informativa y en Solicitud de Reconsideración*. Planteó que, aún existían asuntos relacionados al descubrimiento de prueba que estaban pendientes. Mencionó los gastos reclamados por Molina Fonseca en beneficio de la menor, por cuestionar la forma en que fueron presentados, por entender que no se presentaron recibos, sino fotos de precios de góndolas que no probaban que se hubiese efectuado el gasto. A su entender, mientras no se dilucidará tal asunto, no debía contestar el Interrogatorio sometido por Molina Fonseca. **Todavía, insistía en la**

**presentación de los estados financieros de Molina Fonseca, aun cuando ya el foro había decidido que, de necesitarlos, los debía pagar él mismo.** Aducía que no podía tomar la decisión de asumir capacidad económica hasta que se resolviese el asunto sobre los gastos. Resaltó que la EPA estableció que, antes de que él asumiera capacidad económica, tenía que contar con toda la documentación que se le había solicitado a Molina Fonseca, hacía más de un año y que, luego de que ella sometiera toda esa documentación, incluidos los estados de cuenta bancarios, se le daría término para que evaluara los mismos y determinara si asumía o no capacidad económica y posterior a eso, contestar el Interrogatorio, si decidía no asumir capacidad económica. Afirmó que Molina Fonseca, estando representada por abogada, no objetó la producción de los estados de cuenta, por no contar con fondos suficientes para reproducirlos.

El 16 de junio de 2022, Molina Fonseca se opuso a la reconsideración en la que afirmó que, en la vista del 16 de mayo de 2022, se había argumentado extensamente por las partes sobre varios asuntos del descubrimiento de prueba, resolviendo el tribunal los asuntos pendientes mediante varias órdenes emitidas. Entre estas, concediendo veinte (20) días para completar el descubrimiento de prueba y que, si Ortiz Cosme interesaba los estados financieros de Molina Fonseca, éste los pagara. Afirmó que, en dicha vista, Molina Fonseca entregó toda la prueba solicitada. Señaló que se trataba de una moción de reconsideración tardía y que Ortiz Cosme actuaba temerariamente conociendo la condición de salud de la menor. El 17 de junio de 2022, el TPI rechazó la pretensión de Ortiz Cosme.

El 28 de junio de 2022, Molina Fonseca presentó Moción para que se atendiesen asuntos pendientes con carácter de urgencia y reiterar el incumplimiento de Ortiz Cosme. Señaló que a este se le había concedido a hasta el 27 de junio de 2022 y aún no había cumplido con proveer la documentación requerida ni con la Contestación a

Interrogatorio. Recordemos que tampoco había aceptado formalmente capacidad económica. Reiteró que en la vista del 16 de mayo de 2022 quedó establecido que Molina Fonseca había cumplido con el descubrimiento de prueba y había suplementado el mismo proveyendo evidencia de recibos que corroboran los gastos y necesidades de la menor. Afirmó que el estado en que se encontraba el litigio era responsabilidad de Ortiz Cosme, quien aún no cumplía con sus obligaciones, a pesar de ser la parte promovente. Molina Fonseca señaló que, al examinar en su totalidad el expediente del caso, se podía observar que existía un patrón de incumplimiento debidamente definido, pues Ortiz Cosme reembolsaba lo que le parecía y adeudaba una cantidad sustancial a Molina Fonseca que seguía en aumento, en menosprecio de las necesidades de la menor. Solicitó que se encontrara a Ortiz Cosme incurso en desacato, se le impusieran honorarios de abogado por temeridad y, se eliminasen sus alegaciones por incumplir con las órdenes del tribunal, atentando contra el principio de economía procesal. En cumplimiento con la orden de la EPA identificó como pendientes las siguientes controversias; a) la pensión alimentaria final en beneficio de la menor; b) el incumplimiento del demandante con suplir las contestaciones a interrogatorio y documentación requerida en el descubrimiento de prueba cursado por la parte demandante; y c) el pago de la cantidad adeudada en concepto de gastos que había sido evidenciada desde diciembre de 2021 y se había actualizado en mayo de 2022, que ascendía a cuatro mil doscientos noventa dólares con cincuenta y un centavos ($4,290.51). El tribunal señaló vista de discusión y desacato para el 24 de agosto de 2022 a las 3:00pm.

El 30 de junio de 2022, Molina Fonseca volvió a presentar escrito al tribunal. Esta vez para consignar que el 30 de junio de 2022 había recibido un correo electrónico de Ortiz Cosme en el que representó estar proveyendo contestación al descubrimiento de prueba. No obstante, no cumplió con la contestación a interrogatorio ni producción de

documento alguno. Recordó que el requerimiento de admisiones se dio por admitido desde el 3 de octubre de 2021, mediante Orden notificada el 4 de octubre de 2021. Nuevamente señaló que el caso de pensión alimentaria estaba radicado desde el 2019, que desde el 28 de enero de 2020 se cursó el descubrimiento de prueba a Ortiz Cosme, que este alegó falsamente haber cumplido con el descubrimiento de prueba y, luego, admitió que no había cumplido con el mismo, por lo que estaban en un limbo jurídico que seguía acumulando deuda en concepto de gastos de una menor de edad por razones atribuibles al demandante que denotaban temeridad. Nuevamente peticionó que se le impusieran cinco mil dólares ($5,000.00) como penalidad ante la temeridad exhibida. Propuso que se consolidara la Vista de Desacato de agosto con la de Seguimiento de julio, pues tenía conflicto en su calendario con la vista de agosto.

El 5 de julio de 2022, Ortiz Cosme se opuso a la consolidación de vistas porque tenía que discutir con su cliente lo que estaba pendiente. El TPI le dio la razón. Ese mismo día, Molina Fonseca compareció mediante *Urgente Réplica a oposición sobre Vista de Consolidación.* Señaló que el caso tenía tres (3) vistas pendientes, en fechas distintas. Una, el 11 de julio de 2022, Vista de seguimiento; otra, el 13 de julio de 2022, Vista para fijar pensión alimentaria final; y la tercera, el 24 de agosto de 2022, Vista de desacato ante el incumplimiento del demandante con el descubrimiento de prueba. Particularizó su preocupación sobre el hecho de que Ortiz Cosme era quien había solicitado la suspensión de la vista de alimentos señalada del 13 de junio de 2022 por una situación de salud del padre de su representante legal. A pesar de lo anterior, se le había representado que se proveería contestación a interrogatorio y los documentos requeridos en o antes del 27 de junio de 2022, cosa que no sucedió. Así las cosas, se reseñaló la vista de alimentos para el 13 de julio de 2022 y el descubrimiento de

prueba que consta de contestación a Interrogatorio y producción de documentos, nunca había sido provisto.

Molina Fonseca cuestionó cómo se podía establecer una pensión alimentaria final el 13 de julio de 2022, si Ortiz Cosme aún no había descubierto lo solicitado. Insistió en la consolidación de las vistas. El TPI rechazó la consolidación.

El 11 de julio de 2022, el mismo día de una de las vistas, Ortiz Cosme notificó al tribunal haber contestado el interrogatorio y entregado la documentación pendiente. Molina Fonseca aclaró al foro que solo se había contestado uno de los interrogatorios cursados, el primero y, que, había acompañado un solo documento, el certificado de incorporación. Señaló que había elementos para inferir que Ortiz Cosme generaba más de lo que había informado en su PIPE, ya fuera por su estilo de vida o por la información que omitió sobre sus verdaderos ingresos, corporaciones y flota de vehículos de motor. Llamó la atención a todo el tiempo que había tenido para cumplir con el descubrimiento de prueba y, que había utilizado para ocultar sus verdaderos medios de fortuna. Solicitó, nuevamente, temeridad, en caso de que las partes no pudiesen ponerse de acuerdo.

El 11 de julio de 2022, se celebró la vista de seguimiento. La representante legal de Molina Fonseca efectuó un tracto del caso. Señaló que Molina Fonseca reclamaba una deuda de gastos incurridos desde el 2019 por cuatro mil doscientos noventa dólares ($4,290.00). Aún no había una pensión alimentaria fijada y, la vista será al día siguiente. Reclamó que, ese mismo día, era que Ortiz Cosme había sometido la contestación al interrogatorio. El Tribunal consignó que Ortiz Cosme había incumplido con las órdenes del foro. Se le habían dado muchas oportunidades para así hacerlo, por lo que se encontraba rayando en sanciones. Les concedió cinco (5) minutos a las partes para que dialogaran. Molina Fonseca insistió en la imposición de honorarios por temeridad. Luego del diálogo, la representante legal de Molina

Fonseca informó al tribunal que habían llegado a los acuerdos siguientes: la deuda se fijó en cuatro mil doscientos sesenta y seis dólares con setenta y seis centavos ($4,266.76) a mayo de 2022; Ortiz Cosme saldaría la deuda en cuatro (4) pagos de mil sesenta y seis dólares con sesenta y nueve centavos ($1,066.69) los días veinte (20), a partir del 20 de julio hasta el 20 de octubre de 2022. Los mismos serán depositados en una cuenta de banco de Molina Fonseca. Esta proveería el número de la cuenta. Además, Ortiz Cosme pagaría el cincuenta y cuatro por ciento (54%) de matrícula directamente al Colegio Otoquí; depositará el cincuenta y cuatro por ciento (54%) de gastos de uniformes, libros y materiales escolares, en la cuenta de Molina Fonseca o los pagaría directamente a la tienda. Igualmente se consignó que se le había realizado una oferta, la cual Ortiz Cosme debía contestar en o antes del siguiente día y de no aceptar, la vista final de pensión continuaba para el 13 de julio de 2022. La representante legal de Ortiz Cosme indicó que debía conversar con su cliente dicha oferta, por lo que no estaría lista para la vista del próximo día. La representante legal de Molina Fonseca solicitó honorarios de abogado. El Tribunal nada dispuso, pero aclaró que si para el 13 de julio de 2022 no se había finalizado con el descubrimiento de prueba se le impondrían sanciones a favor de la otra parte por incumplir.

El 12 de julio de 2022, Molina Fonseca presentó un escrito al tribunal solicitando sanciones por temeridad nuevamente contra Ortiz Cosme, toda vez que no habían podido llegar a un acuerdo sobre la pensión. Para esta las sanciones y honorarios por temeridad procedían, pues Ortiz Cosme no había cumplido con el descubrimiento de prueba, había inducido a error al tribunal y se negaba a llegar a un acuerdo, a pesar de conocer la condición de salud de la menor y la situación económica de la madre, al tener que dedicarse al cuido de esta. Puntualizó la diferencia entre las partes señalando que Molina Fonseca había solicitado $1,750.00 (pensión básica, más una partida adicional

para los gastos mensuales en suplementos y medicamentos que requiere la menor) y el cincuenta y cuatro por ciento (54%) de los gastos de mensualidad escolar y la contra oferta de Ortiz Cosme era ochocientos cincuenta dólares ($850.00) y el cincuenta y cuatro por ciento (54%) de los gastos de mensualidad escolar. Enfatizó que el estilo de vida de Ortiz Cosme era un asunto que considerar para descubrir los verdaderos medios de fortuna de un alimentante.

El 12 de julio de 2022, Ortiz Cosme respondió mediante escrito consignando que había cumplido con la contestación al interrogatorio y la producción de los documentos. Reclamó que algunos documentos no eran pertinentes. Objetó cualquier petición sobre una corporación, por no ser parte. Volvió a traer como un asunto pendiente los estados de cuenta de Molina Fonseca y nuevamente solicitó la transferencia de la vista señalada para el 13 de julio de 2022, por asuntos relacionados al descubrimiento de prueba.

El 13 de julio de 2022, el TPI impuso sanción de trescientos cincuenta dólares ($350.00) a Ortiz Cosme, a favor de Molina Fonseca por incumplir con las órdenes del Tribunal sobre el descubrimiento de prueba. Refirió a la EPA en cuanto a la solicitud de transferencia.

El 14 de julio de 2022, Molina Fonseca presentó Urgente moción informativa y para que se expidiesen órdenes. Afirmó que se había celebrado la vista ante la EPA y aun no se había podido establecer una pensión final. Responsabilizó a Ortiz Cosme por persistir en la necesidad de unos estados de cuenta de Molina Fonseca para asumir capacidad económica, situación que había sido atendida desde el 17 de mayo de 2022, por lo que, en dicha fecha, pudo haber solicitado las órdenes que estimara pertinentes. Nuevamente trajo a colación el estilo de vida de Ortiz Cosme y solicitó al foro varias órdenes al Departamento de Transportación y Obras Públicas, a First Bank, la Cooperativa La Sagrada Familia y al Departamento de Hacienda de Puerto Rico.

En la vista de alimentos del 13 de julio de 2022, la EPA reconoció que en vista celebrada el 17 de mayo de 2022, el Tribunal había ordenado a las abogadas a reunirse para que las partes escogiesen la escuela en la cual sería matriculada la menor, ordenó que el descubrimiento de prueba se completase en veinte (20) días y determinó que, si al señor Ortiz Cosme le interesaban los estados de cuenta de Molina Fonseca, debía asumir el costo de estos. La Examinadora expresó que la decisión por parte de Ortiz Cosme de asumir o no capacidad económica tenía que tomarse e informarse. Se señaló que el caso era del 2019 y la pensión alimenticia vigente al 2022, continuaba siendo una provisional. La evidencia de los gastos de la menor surgía del expediente y precisamente, lo necesario para asumir la capacidad económica de los gastos de la menor, era la presentación de los gastos, lo cual se había hecho. El asumir capacidad económica implicaba que no se descubriría prueba sobre los ingresos de la parte alimentante y éste no venía obligado a divulgarla. Ortiz Cosme insistió que necesitaba los estados de cuenta de Molina Fonseca para determinar si asumía capacidad económica, debido a que quería hacer un análisis sobre ciertos gastos presentados y las ayudas de familiares que alega, etc. Se comprometió a que, una vez tuviese los estados de cuenta, determinaría en diez (10) días si asumía o no capacidad económica. Se acordó que: 1) la vista final para la fijación de la pensión alimentaria regular sería el 23 de septiembre de 2022; 2) Molina Fonseca proveería el número de la cuenta o cuentas el mismo día de la vista a la Lcda. Melba Ramos Aponte; 3) el 14 de julio de 2022, la Lcda. Melba Ramos Aponte presentaría el o los proyectos de orden al Tribunal dirigidos a la institución o instituciones financieras para que se proveyera el estado o los estados de cuenta de Molina Fonseca; 4) tan pronto la Lcda. Melba Ramos Aponte recibiera los estados de cuenta de Molina Fonseca, Ortiz Cosme tendría diez (10) días para anunciar si asumiría capacidad económica. De lo contrario, el cómputo de la pensión alimenticia se

haría conforme a las Guías Mandatorias para establecer pensiones alimentarias en Puerto Rico, Reglamento Núm. 8529 de 30 de noviembre de 2014, según enmendado. Finalmente se apercibió de la imposición de sanciones en caso de incumplimiento.

El 14 de julio, Ortiz Cosme presentó proyectos de órdenes dirigidos a Banco Popular, First Bank, Oriental Bank y Pendfed Credit Union, Cooperativa X y Banco Y, en el entendido de que existan otras cuentas que se desconocieran en ese momento para que certificaran si Molina Fonseca, poseía cuentas activas y de ser así, suplieran los estados bancarios. El TPI emitió las referidas órdenes, así como aquellas dirigidas al Departamento de Transportación y Obras Públicas, Departamento de Hacienda y ciertos bancos sobre las cuentas de Ortiz Cosme.

El 18 de julio de 2022, Ortiz Cosme presentó *Oposición a "Urgentísima Moción Informativa sobre falta de acuerdo en cuanto a pensión alimentaria"* solicitando al foro que ordenara a Molina Fonseca cumplir con la documentación que adeudaba, aclarar sobre los documentos sometidos como evidencia, los cuales alegaban no constituían evidencia real por no ser recibos de gastos e impusiera sanciones por las dilaciones ocasionadas en este caso y honorarios de abogado. Ese mismo día, el TPI refirió a la EPA y enfatizó que debían finalizar el descubrimiento para la vista señalada ante la EPA.

El 18 de julio de 2022, Ortiz Cosme pidió la reconsideración de la sanción de trescientos cincuenta ($350.00) impuesta en su contra alegando que quien demoraba los procesos era Molina Fonseca. Ese mismo día, Ortiz Cosme presentó otra moción denominada *Réplica a "Urgentísima Oposición a Reconsideración" y a "Moción para que se atiendan asuntos pendientes con carácter de urgencia y reiterar incumplimiento del demandante*. En esta volvió a traer el asunto de los estados de cuenta de Molina Fonseca, asunto ya resuelto, incluso con órdenes emitidas a varias instituciones bancarias. Sostuvo, además,

que los documentos no fueron entregados como correspondía, sino que de las propias contestaciones al interrogatorio se desprendía que existía documentación como lo son los estados de cuenta, la evidencia de los gastos suplementarios reclamados en la PIPE, el contrato de alquiler de la vivienda, información de la cuenta bancaria incluyendo balance, depósito y retiros de Molina Fonseca. Nuevamente trajo el asunto de las fotos de los precios en las góndolas como sustituto de los recibos de pago de los gastos. Alegó que los actos de Molina Fonseca, hacía más de dos años, habían puesto a Ortiz Cosme en un estado de indefensión y le habían ocasionado gastos adicionales de honorarios de abogado, que no hubieran sido necesarios si Molina Fonseca hubiera cumplido con la entrega de los documentos solicitados. **Inclusive y, a pesar de haberse estipulado por las partes, cuestionó el gasto reclamado de cuatro mil doscientos noventa dólares con cincuenta y un centavos ($4,290.51).** Asunto que, a nuestro entender, es más que temerario, pues ya se había estipulado por las partes la deuda. Enfatizó que el caso era uno complejo, cosa con la cual discrepamos totalmente; que tenía una voluminosa documentación y que Molina Fonseca había complicado, a través de sus varias representaciones legales. Finalmente le pidió al tribunal concediera a las partes un breve término para que las respectivas representaciones legales sostuviesen una reunión a los fines de aclarar el asunto del descubrimiento de prueba que se alegaba debían ambas partes, cumplir con el mismo, según correspondiese y determinar los asuntos pendientes, como intentar llegar a algún acuerdo, sin más dilaciones. Ese mismo día presentó Ortiz Cosme una tercera moción, *Urgente moción en oposición a "Urgente moción informativa y para que se expidan órdenes*. En esta se opuso a las órdenes emitidas por el TPI a favor de Molina Fonseca alegando que ya el descubrimiento de prueba había culminado sin reparo alguno al hecho de que, en la moción anterior, del mismo día, pedía un término para aclarar cualquier asunto sobre descubrimiento de prueba.

El 18 de julio de 2022, Molina Fonseca replicó, a través de réplica consolidada en oposición a escritos presentados por Ortiz Cosme en las entradas 238, 240, 241 y 242. Señaló, entre otras, que los continuos escritos presentados por Ortiz Cosme tergiversaban los hechos e inducían a error al tribunal y obligaban a Molina Fonseca a estar presentando escritos frecuentes que comprometían los recursos de esta, quien se encontraba en desventaja económica sobre Ortiz Cosme y sólo reclamaba lo que en derecho era justo para la menor. Señaló que habían transcurrido siete (7) meses desde que Molina Fonseca entregó los documentos, tres (3) meses desde que Molina Fonseca cumplió con cursar la oferta para intentar alcanzar algún acuerdo y más de treinta (30) meses de haberse impuesto la pensión alimentaria provisional. Nuevamente reitero su pedido de honorarios de abogado por temeridad y/o por el Art. 22 de la Ley Núm. 5-1986.

El 19 de julio de 2022, el TPI las órdenes fueron expedidas. Se ordenó que no debían existir para la fecha de la vista, descubrimiento sin finalizar. En cuanto a los costos de los estados de cuenta de Molina Fonseca se reiteró que serían asumidos por Ortiz Cosme como ya se había determinado previamente.

El 30 de julio de 2022, Ortiz Cosme solicitó la inhibición del Juez que atendía los asuntos imputándole parcialidad a favor de Molina Fonseca, al resolver las mociones presentadas sin concederle el término de réplica de la Regla 8.4 de Procedimiento Civil. Además, se opuso a que se descubriera información de una corporación que no era parte del pleito. Por primera vez adujo que, al acudir al Colegio Otoquí a pagar su parte, le informaron que ya no había cupo para la menor. Sobre la inhibición, el TPI determinó que el juramento no cumplía con las Reglas sobre la solicitud de inhibición, por lo que no procedía.

El 3 de agosto, Molina Fonseca presentó *Moción en cumplimiento de orden sobre alegaciones de Firstbank* (entradas 248 y 249) y réplica y oposición a reconsideración presentada por el demandante (entrada

250). Señaló que la información que se negaba a proveer Firstbank era pertinente, pues Ortiz Cosme previo a la presentación de la PIPE, había alegado que la hipoteca de su residencia era sufragada por la corporación. Además, Ortiz Cosme había informado bajo juramento una cantidad falsa sobre los vehículos de motor que poseía, y así surgía de la información provista por el Departamento de Transportación y Obras Públicas y/o CESCO. Además, surgía de las redes sociales de Ortiz Cosme que éste mantenía un estilo de vida que no era cónsono con los ingresos informados. Afirmó que la Orden a Firstbank, no estaba sujeta a la discreción de la institución bancaria, pues a pesar de que la corporación no era parte en el pleito, la información solicitada, con toda probabilidad, conduciría al descubrimiento de evidencia admisible que corroboraría los verdaderos medios de fortuna de Ortiz Cosme. Puntualizó al tribunal que el caso se había radicado en diciembre de 2019 y aún, tres años después, no se fijaba una pensión alimentaria final, por razón del incumplimiento reiterado de Ortiz Cosme obstruyendo el descubrimiento de prueba y proveyendo información minutos antes de los señalamientos de vista. Asimismo, se había valido de falsas representaciones en las que anticipaba que proveería información y luego, no cumplía y presentaba escritos posteriores sobre reconsideración. Por último, señaló que Ortiz Cosme presentaba alegaciones tergiversadas sobre la matrícula de la menor en el Colegio Otoquí, para provocar nuevas controversias innecesarias.

El 4 de agosto de 2022, Molina Fonseca resumió el tracto sobre el Colegio Otoquí y cómo Ortiz Cosme había retrasado el cumplimiento de su parte causando la falta de cupo. Sugirió entonces el colegio Gedalias y aseveró haber enviado copia a Ortiz Cosme por correo electrónico. El 5 de agosto, Ortiz Cosme ripostó mediante moción informativa y expresó su versión de lo sucedido con el Colegio Otoquí y se opuso al descubrimiento de prueba en Firstbank, por entender que el descubrimiento de prueba había culminado.

El 8 de agosto, el TPI concedió tres (3) días a Ortiz Cosme para informar sobre la matrícula de la menor y cinco (5) días para exponer sobre lo solicitado para el descubrimiento de prueba. Ordenó a las representantes legales reunirse dentro de un término no mayor de cinco (5) días para otorgar alternativas al Tribunal en beneficio de la menor. De no llegar a acuerdo debían solicitar vista para esos fines. Sobre la moción de reconsideración relacionada a la orden de Firtsbank, el TPI la declaró sin lugar.

El 10 de agosto, la representante legal de Ortiz Cosme solicitó una prórroga a la reunión ordenada, por no contar con un acuerdo final. Ese mismo día y, a pesar de la prórroga solicitada, Ortiz Cosme informó no estar de acuerdo con el Colegio Gedalias por ser demasiado costoso, distante del lugar de residencia y del trabajo del padre y la abuela, lo que perjudicaba el recogido y entrega de la menor, además de tener facilidades deterioradas. En su lugar, propuso el Colegio JAH Movement Center. Solicitó cinco (5) días al foro para llegar a un acuerdo e informar, los cuales fueron concedidos.

El 11 de agosto, Molina Fonseca pidió que se señalara una Vista Urgente para el 12 de agosto de 2022 con el propósito de establecer la escuela de la menor, de manera que tuviera oportunidad de realizar toda gestión durante el fin de semana. Solicitó la imposición de honorarios de abogado a Ortiz Cosme, haciendo un recuento de la controversia escolar desde sus inicios y como esta fue provocada por Ortiz Cosme. Ese mismo día, Ortiz Cosme replicó mediante *Urgentísima Réplica a urgentísima solicitud de vista para atender asunto sobre escuela de la menor* imputándole toda la falta sobre el asunto escolar a Molina Fonseca y solicitando honorarios de abogado.

El 12 de agosto de 2022, el TPI ordenó matricular provisionalmente en la escuela sugerida, pagar el porcentaje a las partes según dispuesto y señaló el asunto para el 17 de agosto de 2022 a las 4:00pm.

El 15 de agosto, Ortiz Cosme presentó *Urgente moción informando gestiones realizadas por el demandante*, en la que indicó haber intentado cumplir con su parte en el Colegio Gedalias, pero no haber podido, pues le indicaron que la menor no había sido matriculada. El 15 de agosto, Molina Fonseca explicó por qué se había dilatado la matrícula y presentó prueba de ello. Además, recordó al foro que la vista era virtual, toda vez que ella tenía conflicto en el calendario para comparecer presencialmente y así se lo había dejado saber al TPI.

El 15 de agosto, Ortiz Cosme presentó *Urgente moción informativa y en réplica a moción informativa sobre situación de matrícula de la menor en Gedalias*, más solicitando remedio. Señaló que, a raíz de un email que recibió Ortiz Cosme de Molina Fonseca, el tribunal debía ordenar a las partes en este caso, que ambas tienen representación legal, por lo cual era improcedente que Molina Fonseca se estuviese comunicando con Ortiz Cosme, sobre asuntos que debían procesarse a través de las representaciones legales de cada uno. Solicitó que se ordenara a Molina Fonseca el cese y desista de hacer expresiones improcedentes y carentes de respeto.

El 16 de agosto, el TPI consignó que, ante lo litigioso del proceso entre las partes, la vista sería presencial. Ese mismo día, Ortiz Cosme volvió a someter la solicitud de inhibición, a lo que el tribunal dispuso nada que proveer por los términos. El 17 de agosto, Ortiz Cosme reiteró su solicitud de inhibición. Ese mismo día, mediante otra moción, la representante legal de Ortiz Cosme pidió prórroga para discutir la sanción de trescientos cincuenta dólares ($350.00) con su cliente y cumplir con la misma.

El 19 de agosto, Molina Fonseca pidió al tribunal ordenara a Ortiz Cosme expresar si aceptaba capacidad económica. En igual fecha y en otra moción, solicitó al foro reconsiderar su determinación del 15 de agosto de 2022, para que se ordenase a Ortiz Cosme a informar los beneficios que recibe de cierta corporación. De igual manera, solicitó

que se emitiese una Orden a Firstbank Puerto Rico para que proveyese la información que le fue requerida en cuanto a Ortiz Cosme.

El 17 de agosto de 2022 se celebró la vista. En cuanto a la solicitud de inhibición, el foro volvió a declararla no ha lugar. Luego de una reunión entre las partes, la representante legal de Molina Fonseca informó que se hizo el desglose respecto a la matrícula, cuota de mejoras estructurales, mensualidad y matrícula tardía. Se proveyó el recibo de ciento sesenta y seis dólares ($166.00) por gastos de uniforme. El balance sería mil setecientos treinta y seis dólares ($1,736.00) que computado al cincuenta y cuatro por ciento (54%) corresponde a Ortiz Cosme pagar novecientos treinta y siete dólares con cuarenta y cuatro centavos ($937.44). Se presentó una moción informativa donde se anejaba un recibo de un pago realizado por Ortiz Cosme al Colegio Gedalias de seiscientos treinta dólares con cinco centavos ($630.05) para un restante de trescientos siete dólares con treinta y nueve centavos ($307.39) que no incluía los cuarenta dólares ($40.00) del examen de admisión ni los gastos de materiales y efectos escolares respecto al cincuenta y cuatro por ciento (54%). Ortiz Cosme se comprometió a hacer estos pagos en dos (2) semanas por acuerdo entre las partes. Los recibos se enviarían por conducto de la abogada. Por su parte, la representante legal de Ortiz Cosme solicitó que se orientara a Molina Fonseca que Ortiz Cosme no deseaba comunicación con ella, a menos que fuesen asuntos estrictos de la menor. Por otro lado, exigían respeto de las partes hacia los abogados. La representante legal de Molina Fonseca recordó que la sanción venció el 3 de agosto de 2022. La representante de Ortiz Cosme solicitó reconsideración de la sanción, ya que su representado estaba cumpliendo con los pagos y se había llegado a un acuerdo. El Tribunal ordenó exponerlo por escrito o algún acuerdo entre las partes para evaluarlo. Se mantuvo la vista del 24 de agosto de 2022 a las 3:00 p.m. como "status" y no desacato por videoconferencia. La licenciada Ramos adelantó que no se allanaría a

honorarios de abogado. La licenciada Bula solicitó honorarios de abogado por la vista.

El 22 de agosto de 2022, ante el hecho de no haber cumplido Ortiz Cosme con la orden anterior sobre la aceptación de capacidad, el TPI le concedió un término perentorio de siete (7) días para expresarse. De lo contrario, advirtió permitiría reabrir descubrimiento de prueba conforme petición de Molina Fonseca.

El 23 de agosto de 2022, Molina Fonseca presentó *Moción informativa y para que se emita orden al demandante*. Expuso que existía una pensión alimentaria provisional desde diciembre de 2019 que constaba de quinientos sesenta y ocho dólares con dos centavos ($568.02) mensual y se suponía que se pagara en frecuencia semanal a razón de ciento treinta y un dólares con ocho centavos ($131.08). Señaló que había semanas que se encontraban al descubierto, por lo que solicitó que se emitiese una orden a Ortiz Cosme para mostrar evidencia de los pagos de pensión alimentaria realizados en frecuencia semanal desde que se estableció provisionalmente. Recabó lo anterior como necesario para realizar un cuadre del caso y que se identificase si existía alguna deuda en concepto de pensión alimentaria. El TPI concedió diez (10) días a Ortiz Cosme para exponer sobre lo solicitado y/o mostrar evidencia de los pagos.

El 24 de agosto de 2022, Ortiz Cosme presentó una moción de prórroga solicitando quince (15) días para informar si aceptaba capacidad económica, la cual fue concedida. Se señaló vista para el 9 de noviembre de 2022 a las 2:00 p.m.

**El 2 de septiembre de 2022, Ortiz Cosme nuevamente se volvió a retractar de la deuda estipulada en mayo 2022.** En su lugar, reconoció tener una deuda de ochocientos ochenta y dos dólares y ochenta y dos centavos ($882.82) de pensión, ciento sesenta y dos dólares ($162.00) de gastos escolares y ciento cuarenta y seis dólares con ochenta y cuatro centavos ($146.84) de gastos médicos, los cuales

ascendían a mil ciento noventa y un dólares con sesenta y seis centavos ($1,191.66). Solicitó un ajuste del plan de pago a la cantidad real que adeudaba y que se reconociera cualquier balance en crédito a su favor. **Finalmente, informó que luego de analizar toda la evidencia del caso, no estaría asumiendo capacidad económica, por lo cual esperaba se fijase una pensión en la Vista señalada para el 23 de septiembre de 2022.** En otra moción, el 6 de septiembre, Ortiz Cosme se opuso a que se solicitara cualquier información de la Corporación JJ Parts and Services LLC, entendiendo que la misma no procedía, ya que la Corporación no había sido traída a este pleito, por lo que no correspondía solicitar documentación que le pertenecía a la Corporación, quien era un ente aparte de Ortiz Cosme y no es parte de este caso. En la misma fecha presentó una tercera moción para cuestionar, una vez más, la sanción impuesta de trescientos cincuenta dólares ($350.00), ya que, a su parecer, a quien correspondía imponerlas era a Molina Fonseca, que sí ha incumplido con el descubrimiento de pruebas solicitado, al grado que, en vez de facilitar los procesos, los ha entorpecido con su negativa y al presentar documentación que no es veraz. Presentó una cuarta moción Ortiz Cosme, el mismo 6 de septiembre, donde reiteró que solo adeudaba mil ciento noventa y un dólares con sesenta y seis centavos ($1,191.66), correspondientes a: ochocientos ochenta y dos dólares y ochenta y dos centavos ($882.82) de pensión, ciento sesenta y dos dólares ($162.00) de gastos escolares y ciento cuarenta y seis dólares con ochenta y cuatro centavos ($146.84) de gastos médicos. Solicitó la modificación del acuerdo de pago a la cantidad de mil ciento noventa y un dólares con sesenta y seis centavos ($1,191.66). En una quinta moción, ese mismo día, Ortiz Cosme expuso que, luego de verificar el expediente y revisar los pagos realizados por concepto de pensión a Molina Fonseca, había concluido que la cantidad real que se debía eran ochocientos ochenta y dos dólares y ochenta y dos centavos ($882.82), de los gastos

escolares se debe la cantidad de ciento sesenta y dos dólares ($162.00) y de gastos médicos la cantidad de ciento cuarenta y seis dólares con ochenta y cuatro centavos ($146.84), para un total por todos esos conceptos de mil ciento noventa y un dólares con sesenta y seis centavos ($1,191.66). De manera que Ortiz Cosme tenía un crédito de novecientos cuarenta y un dólares con setenta y dos centavos ($941.72), por los pagos realizados el 20 de julio de 2022 y el 20 de agosto de 2022, por la cantidad de mil sesenta y seis dólares con sesenta y nueve centavos ($1,066.69) cada uno. Solicitó que se le acreditarán novecientos cuarenta y un dólares con setenta y dos centavos ($941.72), a la deuda que tuvo el demandante por el periodo del año 2020 por los efectos de la pandemia. Por otro lado, en una sexta moción, de la misma fecha, Ortiz Cosme informó al tribunal que había costeado y analizado las cuentas bancarias de Molina Fonseca y había comprobado que estas fueron cerradas a la fecha en que se solicitó el descubrimiento. Advirtió que del análisis que se realizó de todas las cuentas se percataron que Molina Fonseca contaba con cantidades de dinero que no son las que había informado en el trayecto del caso, así como los gastos que reflejan las cuentas, no eran de una persona que no contaba con recursos económicos.

El 16 de septiembre de 2022, Molina Fonseca solicitó la transferencia de la vista de alimentos del 9 de noviembre. Explicó que Ortiz Cosme recientemente había informado que no aceptaría capacidad económica y que por otro lado se negaba a proveer información de sus cuentas alegando que el descubrimiento de prueba había concluido. El 21 de septiembre de 2022, el TPI abrió el descubrimiento de prueba ante el rechazo de Ortiz Cosme de aceptar capacidad económica. Al otro día, Molina Fonseca informó al foro haber enviado un breve interrogatorio y producción de documentos.

La vista de alimentos se transfirió para el 30 de noviembre de 2022.

El 6 de octubre de 2022, Molina Fonseca presentó Réplica y oposición a las alegaciones más recientes presentadas por Ortiz Cosme en escritos radicados el 2 y 6 de septiembre de 2022 (entradas 306, 307, 308, 309, 310 y 312). Solicitó al foro que emitiese Orden a Ortiz Cosme para que pagara las sanciones inmediatamente, so pena de desacato y que se eliminaran sus alegaciones; emitiese Orden al demandante para que en un término de cinco (5) días cumpliese con la Producción de Documentos y con responder todas aquellas preguntas que fuesen dirigidas a su persona; tomara conocimiento del incumplimiento con la frecuencia de pago de pensión alimentaria por parte de Ortiz Cosme; declarase No Ha Lugar las solicitudes del demandante por representar una afrenta al mejor bienestar de la menor; y se le ordenase cumplir con lo acordado y ordenado en la Vista del 11 de julio de 2022, para que Ortiz Cosme completara el plan de pago restante y correspondientes a los meses de septiembre y octubre de 2022.

Ortiz Cosme replicó. Nuevamente cuestionó la evidencia presentada por Molina Fonseca en su forma y contenido argumentando que la tabla presentada detallaba ciertos gastos que incluso incluyen gastos de agua, luz, vivienda, peaje, auto expreso, estacionamiento, gasolina y pago mensual de la tarjeta de crédito de Costco que correspondían a Molina Fonseca y no a la menor. **Insistió en retractarse de la deuda estipulada** argumentando que tenía un crédito de novecientos cuarenta y un dólares con setenta y dos centavos ($941.72) por los pagos realizados el 20 de julio de 2022 y el 20 de agosto de 2022, por la cantidad de mil sesenta y seis dólares con sesenta y nueve centavos ($1,066.69) cada uno.

El 26 de octubre de 2022, Molina Fonseca reclamó que Ortiz Cosme aun no cumplía con la contestación al interrogatorio cursado en agosto de 2021 ni había producido un solo documento sobre sus estados bancarios y demás prueba requerida del descubrimiento de

prueba. Reclamó haber cursado descubrimiento de prueba y el término para contestarlo y producir la documentación requerida había vencido el 24 de octubre de 2022, sin que se recibiera respuesta o documento alguno. Reiteró el menosprecio de Ortiz Cosme y su patrón de incumplimiento en cuanto a éste y otros asuntos, sin tener consecuencia alguna, ya que ni siquiera había realizado el pago de las sanciones que le fueron impuestas, además de incumplir con el pago y la frecuencia de la pensión alimentaria que le fue impuesta provisionalmente en diciembre de 2019. Reiteró su petición de que contestara el interrogatorio; proveyese la documentación requerida; se emitiera Orden a Firstbank; e impusiera honorarios de abogado y litis expenses en la cantidad de cinco mil dólares ($5,000.00).

El 27 de octubre de 2022, Ortiz Cosme presentó escrito en el que se opuso a la solicitud de reabrir el descubrimiento de prueba hasta que el tribunal apelativo resolviese el recurso que este había presentado cuestionando el que se abriese el descubrimiento de prueba. Esto a pesar de que este lo había detenido con la alegación de que vislumbraba aceptar capacidad económica.

El mismo día de la vista, el 9 de noviembre, Ortiz Cosme presentó un escrito en el que la representante legal notificó que no asistiría a la vista por estar indispuesta, debido a una afección y fuerte dolor en cadera y pierna izquierda, a consecuencia de un accidente automovilístico que le ocasionaba fuertes dolores e inclusive le impedía estar periodos prolongados de pie y conducir. Ninguno de estos padecimientos era sorpresivo ni impedían la celebración de una vista virtual, de haber sido planteado oportunamente. Ortiz Cosme le señaló al TPI que la controversia sobre el descubrimiento de prueba estaba ante el Tribunal Apelativo, por lo que no se debía proseguir con el descubrimiento. Pidió la recalendarización de la vista hasta que el TA resolviera. Esto a pesar de que en derecho es harto conocido que la presentación de una solicitud de certiorari no suspenderá los

procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. 4 LPRA Ap. XXII-B, R. 35 (A)(1). El 9 de noviembre de 2022, el Tribunal de Apelaciones denegó intervenir con la determinación del foro primario sobre reabrir el descubrimiento de prueba.

El 9 de noviembre de 2022 y cumpliendo con lo discutido en la vista, Molina Fonseca acompañó moción solicitando órdenes a FirstBank para que proveyese los estados bancarios a nombre de José M. Ortiz Cosme y/o José M. Ortiz Cosme DBA "ATV & Scooter Word Racing" desde el 2019 al presente. En la eventualidad de que hubiese cuentas a nombre de éste o la cuenta DBA "ATV Scooter & Word Racing" se hayan cerrado, se ordenó a FirstBank de Puerto Rico que certificara también en qué fecha se cerraron dichas cuentas y el balance al momento de cierre. Ello, tomando en consideración que un DBA no tiene personalidad jurídica independiente del demandante. El 10 de noviembre, el TPI emitió las órdenes requeridas.

Finalmente, el 14 de noviembre, Ortiz Cosme pagó la sanción de trescientos cincuenta dólares ($350.00) impuesta en su contra. En esa misma fecha, Molina Fonseca presentó moción indicando que el pago de las sanciones había sido ordenado que se emitiera directamente a Molina Fonseca en la vista del 9 de noviembre y, sin embargo, Ortiz Cosme lo había hecho a la Unidad de Cuentas, conociendo que alargaba el recibo de este por Molina Fonseca. Pidió que se autorizara el desembolso a nombre de Molina Fonseca.

El 14 de noviembre de 2022, Molina Fonseca reiteró la petición de órdenes que permitieran conocer los estados de todas aquellas cuentas que estén bajo el nombre de Ortiz Cosme o de cualquier tercero, pero en la que sea cotitular o esté autorizado en la Cooperativa La Sagrada Familia, Banco Popular de Puerto Rico, Oriental Bank y Penfed. Explicó que dichas órdenes se habían solicitado previamente,

sin embargo, se incluía a la Corporación, por lo que habían sido denegadas y no fue hasta el 9 de noviembre de 2022 que se autorizó a solicitar órdenes dirigidas a la persona de Ortiz Cosme.

El 15 de noviembre, la representante legal de Molina Fonseca presentó otra moción, en la cual se opuso a la toma de deposición de su representada, particularmente porque el 9 de noviembre se había concedido un término de quince (15) días para finalizar el descubrimiento, tomando en consideración que la vista de alimentos estaba programada para el 30 del mismo mes. Reiteró la importancia de obtener información que permitiese conocer los verdaderos medios de fortuna de Ortiz Cosme, quien no incluyó partida de vivienda en la PIPE, decía generar $3,000.00 de ingreso bruto, tenía nueve (9) vehículos de motor, aproximadamente, según certificado por el CESCO, y reportaba cinco mil dólares ($5,000.00) de ingreso en sus planillas de contribución de ingresos. Sostuvo que la solicitud de Ortiz Cosme era tardía, pues según la licenciada Ramos, su interés en tomar la deposición surgía de los estados bancarios obtenidos desde el 6 de septiembre de 2022, o sea prueba obtenida hacía más de sesenta (60) días.

El 15 de noviembre, el TPI indicó que todo descubrimiento debía estar finalizado cinco (5) días antes de la vista.

El 9 de noviembre se celebró una vista híbrida. La representante legal de Molina Fonseca señaló que Ortiz Cosme había incumplido con el acuerdo alcanzado en mayo de 2022 y debía los pagos de septiembre y octubre de 2022 y ahora reclamaba un crédito. Indicó que una de las controversias y los atrasos en el litigio eran el consistente incumplimiento con el descubrimiento de prueba. Indicó que solo ha recibido una contestación a interrogatorio con evasivas. Nuevamente solicitó honorarios por temeridad que había solicitado en nueve (9) ocasiones previas, además de *litis expensas* en el último escrito. El Tribunal concedió quince (15) días para finalizar el descubrimiento de

prueba al 30 de noviembre de 2022 y se contestaran los interrogatorios. Si las contestaciones no estaban correctas, debían informar por escrito de inmediato. Declaró "no ha lugar" la solicitud de tiempo adicional de la licenciada Ramos y concedió cinco (5) días a ambas partes para solicitar cualquier orden que fuese necesaria.

El 15 de noviembre, la representante legal de Ortiz Cosme solicitó un término para responder a las órdenes solicitadas por Molina Fonseca y ya concedidas por el foro. Ese mismo día, Molina Fonseca se opuso, por entender, que el término de la prórroga excedía el término concedido para culminar el descubrimiento de prueba. El 15 de noviembre, Ortiz Cosme, mediante otra moción, notificó haber enviado a Molina Fonseca Pliego de Interrogatorios y Solicitud de Producción de Documentos.

El 16 de noviembre y, a pesar de haber sido ya resuelto por el foro, Ortiz Cosme insistió en que dejaran sin efecto las órdenes emitidas, a tales fines, a las siguientes instituciones financieras: Cooperativa La Sagrada Familia, Banco Popular de Puerto Rico, Oriental Bank y Penfed. Ese mismo día, Ortiz Cosme mediante *Moción solicitando reseñalamiento de vista ante la examinadora de pensiones* requirió la transferencia de la vista por interesar deponer a Molina Fonseca. Asunto que ya había sido resuelto por el foro primario.

El 18 de noviembre, Ortiz Cosme insistió, mediante escrito, en su derecho a deponer a Molina Fonseca. El 21 de noviembre, Molina Fonseca respondió, distinguió su solicitud de órdenes de la intención de Ortiz Cosme de deponer a Molina Fonseca, pues pretendía justificar su deposición en unos estados bancarios de Molina Fonseca que obtuvo desde inicios del mes de septiembre de 2022, a más de sesenta (60) días de contar con la prueba restante para finalizar el descubrimiento de prueba y anunció por primera vez su interés de la toma de deposición el 9 de noviembre de 2022. De hecho, ni siquiera aseguró que fuese a tomar la misma. Sostuvo que Ortiz Cosme cursó un nuevo

Interrogatorio, extenso y repetitivo, y requirió que fuese contestado antes de la deposición que pretendía coordinar en exceso del término final concedido por el foro para completar el descubrimiento de prueba. El 21 de noviembre, Molina Fonseca se opuso a que la EPA transfiriese la vista del 30 de noviembre y resaltó que el descubrimiento de prueba se debía dar por finalizado.

El 21 de noviembre y, a pesar de la cercanía de la vista señalada para el 30 de noviembre, Ortiz Cosme solicitó una prórroga para presentar la certificación sobre los beneficios que recibía de JJ Parts and Services, LLC. En esa misma fecha, Molina Fonseca se opuso a lo anterior solicitando que se le ordenase a Ortiz Cosme cumplir con proveer lo solicitado bajo juramento en un término perentorio de cuarenta y ocho (48) horas. El 22 de noviembre, por primera vez, el tribunal en cuanto a la solicitud de Molina Fonseca en ese último escrito expresa; Nada que proveer. El Tribunal no permitirá escritos de dúplicas ni oposiciones a estas, sin la debida autorización. Además, declaró no ha lugar a la prórroga.

El 22 de noviembre, Ortiz Cosme presentó moción solicitando órdenes del foro. Reclamó haber advenido en conocimiento de que Molina Fonseca operaba "Delicias for All Fundation, Inc.", inscrita el 9 de marzo de 2021, bajo el número de registro 461285, con su estatus activa, según el registro de Corporaciones. Solicitó esta certificara bajo juramento, sobre los beneficios que recibía de la Corporación "Delicias for All Fundation, Inc.", como accionista o empleada de la corporación, salario devengado, bonificaciones y/o cualquier préstamo realizado a la corporación para su beneficio personal y presentara los estados de cuenta de tal corporación desde el 2021. El 22 de noviembre, el TPI emitió dichas órdenes a ser cumplidas en cinco (5) días.

El 23 de noviembre, mediante moción, Ortiz Cosme notificó haber cumplido con la certificación requerida. Ese mismo día, Molina Fonseca se opuso mediante escrito a todo descubrimiento de prueba a ser

realizado a la Corporación Delicias For All, argumentando que era una personalidad jurídica distinta a Molina Fonseca y no era parte del pleito. Pidió que se limitara el descubrimiento de prueba; se pronunciara sobre los honorarios por temeridad, *litis expensas*, deuda de pensión alimentaria y gastos médicos, posterior a mayo de 2022 hasta el 16 de septiembre de 2022; asuntos aun no resueltos por el foro.

El 23 de noviembre, la EPA notificó que la vista del 30 se mantendría según calendarizada. Ese mismo día, Ortiz Cosme solicitó órdenes dirigidas a varios comercios indicando haberse enterado de que Molina Fonseca proveía bizcochos a varios comercios. El 25 de noviembre, Molina Fonseca se opuso, por entender que la solitud era una tardía.

El 28 de noviembre, Molina Fonseca presentó *Moción para aclarar asunto sobre estados bancarios de la demandada, informar situación sobre estados bancarios del demandante e informar gestiones de la demandada para cumplir con orden de la EPA.* Señaló que el asunto sobre los estados bancarios de Molina Fonseca se atendió y resolvió desde la Vista de Estatus celebrada el 16 de mayo de 2022 y así surgía de la Minuta y había sido señalado en la Vista de alimentos del 13 de julio de 2022. Afirmó que no fue hasta septiembre de 2022 que Ortiz Cosme intentaba relitigar el asunto. Arguyó que la representante legal de Ortiz Cosme en la vista del 4 de mayo de 2022 anunció que tenía los estados bancarios de Ortiz Cosme de 2017 y 2018, pero no los entregaría hasta a obtener los estados de Molina Fonseca.

El 28 de noviembre, el TPI notificó que ya había otorgado todas las órdenes solicitadas y no concedería nada más con el descubrimiento de prueba, ante el hecho de que existían términos que no serían extendidos para su finalización. A lo que Molina Fonseca solicitó reconsideración, por entender que los estados bancarios de Ortiz Cosme de 2017 y 2018 no eran un asunto nuevo, sino que surgían del

descubrimiento de prueba cursado desde el 28 de enero de 2020 y 21 de agosto de 2021 y que habían sido solicitados consistentemente. El TPI reiteró que no emitiría nuevas órdenes, pero ordenó el cumplimiento de cualquier orden previa.

El 29 de noviembre, Ortiz Cosme pidió que la vista se cambiara a una de estatus para que Molina Fonseca pudiera cumplir con lo peticionado en el descubrimiento de prueba. **Ese mismo día, en otra moción, Ortiz Cosme informó haber cumplido con el pago de cuatro mil doscientos sesenta y seis dólares con setenta y seis centavos ($4,266.76), estipulado en mayo de 2022, o sea, seis (6) meses después.** En esa misma fecha, Ortiz Cosme presentó una tercera moción denominada *Breve moción solicitando reconsideración sobre las órdenes a distintos comercios,* donde alegadamente Molina Fonseca vendía bizcochos. Presentó una cuarta moción, *Réplica a "urgentísima moción para reiterar orden emitida en corte abierta el 9 de noviembre de 2022 y para que se emita resolución urgente".* En esta, nuevamente alegó que las órdenes solicitadas no eran tardías y guardaban relación con los ingresos de Molina Fonseca.

El 29 de noviembre, Molina Fonseca cumplió con la certificación requerida relacionada a la Corporación Delicias for all. El mismo día, Ortiz Cosme presentó moción, la que acompañó con estados de cuenta de Molina Fonseca señalando que faltaba prueba, con la cual Molina Fonseca no había cumplido.

El 30 de noviembre, Molina Fonseca presentó una moción denominada *Objeción a contestación a interrogatorio y producción de documentos.* En el escrito, a pesar de reconocer que el 9 de noviembre el TPI instó a radicar cualquier objeción a las contestaciones inmediatamente, incluyó sus objeciones a las contestaciones dadas por Ortiz Cosme, para que el tribunal evaluara la razonabilidad de estas. En esa misma fecha, Ortiz Cosme informó al tribunal que el día antes,

o sea, el 29 de noviembre, había cumplido con la contestación al interrogatorio y producción de documentos.

El 30 de noviembre, el TPI declaró no ha lugar la reconsideración de Ortiz Cosme sobre el rechazo a las órdenes relacionadas a los comercios que alegadamente compraban bizcochos a Molina Fonseca. En igual fecha, nuevamente ordenó a Ortiz Cosme a contestar todas las preguntas del interrogatorio.

El 30 de noviembre, Molina Fonseca presentó *Moción informativa sobre descubrimiento de prueba*, para que se conceda remedio urgente y se emita resolución. Reclamó que la Corporación JJ Parts and Services, LLC, era un mero "alter ego" de Ortiz Cosme y en dicha corporación existía tal identidad de interés y propiedad, que las personalidades de la corporación y la de Ortiz Cosme se hallaban confundidas, por lo que la corporación no es verdaderamente una persona jurídica independiente y separada. Señaló que al examinar los únicos estados bancarios del demandante que se habían podido obtener en virtud de la Orden emitida el 10 de noviembre de 2022, ante su falta de cooperación con el descubrimiento de prueba, se podía establecer que el demandante utilizaba la corporación como un "alter ego" de sí mismo, que el demandante lleva a cabo ciertos actos de naturaleza ilegal y que existía una relación causal entre la utilización de la corporación como instrumento y el desvío de fondos o ingresos recibidos para evadir su responsabilidad. Por lo tanto, reclamó la existencia de los elementos necesarios para proceder a descorrer el velo corporativo.

El 30 de noviembre de 2022, Molina Fonseca también presentó *Solicitud parcial de reconsideración de orden* notificada el 30 de noviembre de 2022. Reiteró que la solicitud sobre los estados bancarios del demandante correspondientes a los años 2017 y 2018 había sido reiterada desde mucho antes que se emitiera Orden para culminar el descubrimiento de prueba. Solicitó se emitiese resolución en relación a

la deuda en concepto de pensión alimentaria de mil cuatrocientos treinta y nueve mil dólares con treinta y un centavos ($1,439.31), a la deuda acumulada por falta del pago de reembolsos de mil trescientos seis dólares con veintitrés centavos ($1,306.23), la solicitud de honorarios por temeridad de cinco mil dólares ($5,000.00) y la solicitud de *litis expensas* por cinco mil dólares ($5,000.00), conforme a lo anticipado en la Minuta de la Vista del 9 de noviembre de 2022. El 30 de noviembre de 2022, Ortiz Cosme presentó *Réplica a "oposición a solicitud de reconsideración,* en la cual se opuso nuevamente a las órdenes solicitadas por Molina Fonseca. Finalmente, el 1 de diciembre, el TPI la declaró no ha lugar.

El 1 de diciembre de 2022, Molina Fonseca cargó su prueba en SUMAC y aclaró que el descubrimiento de prueba sobre lo que se conocía hasta que se entregaron los estados bancarios de Ortiz Cosme para los periodos de 2019 a noviembre de 2022, había culminado y lo que restaba era que la demandada contestara el Interrogatorio dentro del periodo dispuesto en las Reglas de Procedimiento Civil y actualizara su PIPE.

El 2 de diciembre, Ortiz Cosme presentó escrito, en el cual señaló que Molina Fonseca no cumplió totalmente con la orden del tribunal relacionada a la Corporación Delicias for All. Afirmó que Molina Fonseca debía proveer los estados bancarios a nombre de la Corporación Delicias For All Fundation, Inc., desde el año 2021, y en la eventualidad de que hubiese cuentas a nombre de esta Corporación se hubiesen cerrado, certificar en qué fechas se cerraron dichas cuentas y el balance al momento del cierre, con lo cual no había cumplido. El 6 de diciembre, Molina Fonseca le aclaró al tribunal que el 23 de noviembre, el foro había aclarado que el descubrimiento iba dirigido "a los beneficios de la dama" y no a la corporación, porque esta no era parte, por lo que, habiendo cumplido, el foro dio por cumplida la orden posteriormente. Además, arguyó que la solicitud de órdenes

era tardía y no procedían en derecho, ya que la corporación tenía personalidad jurídica separada e independiente de la demandada y no era parte del pleito. Reiteró el incumplimiento de Ortiz Cosme con las órdenes del tribunal relacionadas a las preguntas objeto de interrogatorio y la producción de documentos.

El 6 de diciembre, Molina Fonseca presentó *Moción para conocer estatus sobre el pago de deuda en concepto de pensión alimentaria ($1,439.31), pago de deuda en concepto de reembolso de gastos ($1,306.23), honorarios por temeridad y litis expensas.* En la misma fecha presentó una segunda moción titulada *Moción para que se encuentre al demandante incurso en desacato por falta de pago de pensión alimentaria y reiterado incumplimiento con el descubrimiento de prueba.*

El 6 de diciembre, el TPI se reiteró en sus determinaciones sobre el descubrimiento y en cuanto a las sanciones, las declaró no ha lugar, por el momento. Informó estar evaluando la solicitud de sanciones, honorarios por temeridad y asuntos de gastos de litigio.

En la Minuta ante la EPA del 30 de noviembre, esta hizo constar que no se había podido celebrar por la cantidad de escritos presentados por las partes. Puntualizó que, el 28 de noviembre 2022 se presentaron ocho (8) escritos y el 29 de noviembre de 2022 se presentaron diez (10), entre las cuales se presentó una moción con evidencia a ser utilizada en la vista de alimentos y una presentada el 30 de noviembre de 2022. Ambas representantes legales intentaron justificar su falta de diligencia. La vista final para la fijación de la pensión alimentaria regular quedó pautada para el 21 de febrero de 2023. Se reiteró el deber de presentar la moción conjunta en el expediente digital (SUMAC) originalmente ordenada para enero de 2022, en o antes del 24 de enero de 2023. Dicha moción contendría, entre otras, estipulaciones y exbibits a presentarse.

El 8 de diciembre de 2022, el TPI emitió Resolución y Orden sobre los honorarios por temeridad y *litis expensas* solicitados por Molina Fonseca. Luego de hacer un recuento de algunos de los trámites procesales del caso entre las partes efectuó las siguientes determinaciones de hechos. El demandante ha incumplido reiteradamente con el descubrimiento de prueba, lo cual ciertamente ha provocado una dilación innecesaria en el proceso que se encuentra ante la consideración del Tribunal. Dicha dilación ha provocado que la demandada haya tenido que incurrir en esfuerzos excesivos que surgen del recuento procesal en el expediente del Tribunal. El demandante no ha sido cooperador con el descubrimiento de prueba, a pesar de que es éste la parte promovente, pues fue el demandante quien instó la acción por una diferencia de ochenta y tres dólares con treinta y tres centavos ($83.33). Asimismo, se ha valido de estrategias procesales que van en detrimento de una sana administración de la justicia. El expediente del Tribunal y las argumentaciones de ambas partes presentan un patrón que ha vulnerado uno de los principios de mayor interés para los Tribunales: el mejor bienestar en interés de una menor, que cuenta con varios diagnósticos de salud que le han sido evidenciados a este Tribunal en el transcurso del proceso. Concluyó que Ortiz Cosme debía el pago de honorarios por temeridad por la cantidad de **dos mil dólares ($2,000.00) y el pago de tres mil dólares ($3,000.00) en concepto de *litis expensas*,** a ser satisfechos directamente a Molina Fonseca, a través de su representación legal.

El 9 de diciembre, Ortiz Cosme presento *Moción en cumplimiento de orden y en réplica a moción de desacato* presentada por la parte demandada. El 16 de diciembre, Ortiz Cosme presentó *Réplica a "moción informativa sobre descubrimiento de prueba, para que se conceda remedio urgente y se emita resolución."* En esta alegó que el hecho de que Ortiz Cosme tuviese un DBA con el nombre ATV & Scooter Word Racing, a su nombre, nada tenía que ver con la Corporación JJ

Parts and Services, LLC.; eran dos asuntos diferentes, ya que las corporaciones eran entidades separadas. Se opuso a la intención de Molina Fonseca de descorrer el velo corporativo.

El 19 de diciembre, Ortiz Cosme solicitó reconsideración de la Resolución que le impuso honorarios por temeridad y *litis expenses* por "ser el la parte demandante". Sostuvo que no se habían cumplido con los requisitos para que se fijen las costas de *litis expensas* ni honorarios de abogado, por lo que la imposición de estas no procedía en derecho. Además, reclamó que el monto era excesivo, considerando que Ortiz Cosme había realizado pagos de cantidades sustanciales de dinero en términos de tiempo muy cortos y que Molina Fonseca alegaba no tener recursos económicos para costear el litigio, teniendo a su disposición los servicios legales gratuitos que están disponibles para quienes no puedan costearlo. El 21 de diciembre, el foro declaró dicha moción de reconsideración no ha lugar.

El 27 de diciembre, Molina Fonseca solicitó al TPI aclarase orden sobre si permitía o no descorrer el velo corporativo.

El 24 de enero de 2023, Molina Fonseca presentó *Moción de prórroga para cumplir con moción conjunta*. Aceptó que era el último día para presentar la moción, pero señaló que Ortiz Cosme aun no cumplía con el descubrimiento de prueba; tampoco había recibido los estados de cuenta bancarios de Ortiz Cosme correspondientes a los años 2017 y 2018, a pesar de que se les había representado que se proveerían. Por último, señaló que la representación legal de Ortiz Cosme se había comunicado para solicitar que se le concediera hasta el 27 de enero de 2023 con el propósito de cursar una oferta. El 25 de enero de 2023, el foro concedió hasta el 13 de febrero de 2023 para presentar la Moción Conjunta.

El 8 de febrero de 2023, la representación legal de Molina Fonseca solicitó el relevo de sus funciones ante diferencias irreconciliables. Pidió se concediera a Molina Fonseca un término de

sesenta (60) días para contratar nueva representación legal; prórroga adicional para cumplir con la Moción Conjunta; término para replicar a la oposición de Ortiz Cosme de descorrer el velo corporativo y que se paralizaran los términos concedidos hasta que Molina Fonseca informara su nueva representación legal.

El 8 de febrero de 2023, el TPI aceptó la renuncia e instó a Molina Fonseca a obtener nueva representación legal en un término más corto al solicitado.

El 13 de febrero, Molina Fonseca compareció por derecho propio e informó que estaba lista con la documentación disponible, resumida y organizada para ser presentada y concluir con el caso. Reclamó que Ortiz Cosme debía estados de cuenta del 2016, 2017 y 2018 y su pasaporte. Señaló que estaba en espera de unas correcciones señaladas a la representación legal de Ortiz Cosme sobre la moción conjunta, para someter la de ella a la vez. Indicó que contaba con toda su prueba, pero estaba en espera de la de Ortiz Cosme. Por último, solicitó al tribunal ordenara a Ortiz Cosme contestar lo que faltaba del interrogatorio y entregar los documentos antes mencionados. En igual fecha, Molina Fonseca presentó otra moción reclamando honorarios de abogado por la cantidad de once mil seiscientos un dólar con sesenta centavos ($11,601.60) hasta enero 2023. Expuso que los gastos extraordinarios de honorarios para este caso habían sido ocasionados por Ortiz Cosme y su representación legal, al haber retrasado los procesos, entorpeciendo en múltiples ocasiones, incumpliendo con el descubrimiento de prueba, intentando desviar la atención del Honorable Tribunal con asuntos ya resueltos y muchas veces repitiendo asuntos sobre lo ya ordenado, incumpliendo con los procesos, órdenes del foro y con la ley, de manera temeraria. Reconoció que el demandante había pagado tres mil dólares ($3,000.00) de honorarios de abogado que había abonado a su deuda. En la misma fecha presentó una tercera moción, en la cual replicó a la oposición del

demandante a descorrer el velo corporativo. El TPI solicitó los proyectos de órdenes. A lo cual, en la misma fecha, Ortiz Cosme se opuso mediante reconsideración reclamando tener un término para oponerse a la reclamado por Molina Fonseca.

Ante el hecho de que la moción conjunta no fue presentada en el término concedido, el 13 de febrero, la EPA reséñalo la vista para el 1 de abril de 2023. En igual fecha, el TPI concedió veinte (20) días a Ortiz Cosme para replicar en cuanto a la petición de proyectos de órdenes dirigidas a descorrer el velo corporativo.

El 16 de febrero de 2023, el TPI ordenó al demandante a pagar el cincuenta y cuatro por ciento (54%) los gastos médicos y escolares de los meses de septiembre, octubre, noviembre, diciembre 2022 y enero de 2023. En cuanto a los gastos de honorarios incurridos por Molina Fonseca concedió a Ortiz Cosme veinte (20) días para exponer razones por las cuales no debía otorgarlos ante el hecho de alegaciones de atrasos en el pago de la pensión.

El 22 de febrero de 2023, Ortiz Cosme presentó moción en la que suplicó al tribunal que tomara en consideración la conducta de Molina Fonseca durante el litigio y le obligara a esta a comparecer mediante representación legal. **En esa misma fecha presentó otro escrito,** ***Moción informativa y en solicitud de remedio urgente,*** **en la que sorprendentemente y, a pesar de alegar la incapacidad de Molina Fonseca para defenderse, pidió al tribunal que se le ordenara a Molina Fonseca ofrecer una oferta por escrito sobre la pensión alimentaria, la cual sería discutida de inmediato con su representado.**

El 2 de marzo de 2023, Ortiz Cosme reiteró, a pesar de ser un asunto resuelto, que no procedía descorrer el velo corporativo de JJ Parts and Services LLC, por ser un ente aparte que no formaba parte del pleito. Reiteró también que Molina Fonseca no había presentado los estados financieros y bancarios y otros documentos e información que

indicaba la orden expedida a la Corporación "Delicias for All Fundation, Inc.", que evidenciaban los ingresos de los cuales se beneficiaba. Esto, a pesar de que este asunto también había sido resuelto previamente. Destacó que no procedía el descubrimiento de Ortiz Cosme y las corporaciones relacionadas, ya que no se le había permitido averiguar sobre la corporación de Molina Fonseca, Delicias for All. Solicitó **tardíamente** la reconsideración de la orden emitida el 13 de febrero de 2023, declarando ha lugar la solicitud por derecho propio que hiciera Molina Fonseca para descubrir prueba de la Corporación JJ Parts and Services, LLC.

El 2 de marzo de 2023, el TPI nuevamente ordenó a Ortiz Cosme pagar el cincuenta y cuatro por ciento (54%) de los gastos médicos y escolares de los meses de septiembre, octubre, noviembre, diciembre de 2022 y enero de 2023. En cuanto a los gastos de honorarios incurridos por Molina Fonseca concedió veinte (20) días para exponer razones por las cuales no se debían otorgar ante el hecho de alegaciones de atrasos en el pago de la pensión.

El 6 de marzo de 2023, Molina Fonseca se opuso a la contratación de representación legal para ella misma por encontrarse lista y habilitada para representarse. Expuso que era Ortiz Cosme quien transgredía los modales en la litigación. Ese mismo día, el foro primario concedió las órdenes solicitadas por Molina Fonseca. El 7 de marzo, el foro dejó sin efecto toda orden otorgada posterior a haber finalizado el descubrimiento de prueba. Señaló vista de *litis expensas* para el 9 de mayo de 2023 a las 2:00 PM.

El 7 de marzo, Ortiz Cosme reiteró su pedido de que Molina Fonseca compareciera representada por abogado. Ese mismo día, Molina Fonseca presentó los proyectos de órdenes dirigidas a varias compañías para indagar sobre información de José M Ortiz Cosme, ATV Scooter Word Racing (y/o Tire), sobre cualquier cuenta a nombre de éste y/o números de Teléfono 787-225-8019 y 787-859-0400,

incluyendo fecha de inicio de apertura, historial de transacciones de pago, si han cerrado cuentas desde el año 2017 hasta el presente y desde qué fuente han sido pagadas las mismas. Además, Molina Fonseca presentó *Moción informativa en reconsideración y descubrimiento de pruebas*, donde suplicó al tribunal le permitiera descorrer el velo corporativo de JJ Parts and Services.

El 16 de marzo de 2023, Ortiz Cosme consignó mediante moción, haber cumplido con el cincuenta y cuatro por ciento (54%) de los gastos que le correspondía pagar, como gastos médicos de la menor, habiendo pagado cincuenta y ocho dólares con cincuenta y seis ($58.56).

El 23 de marzo de 2023, la Lcda. Leticia Maldonado Ruíz informó haber asumido la representación legal de Molina Fonseca. El 3 de abril, Molina Fonseca pidió una prórroga de diez (10) días para cargar toda la prueba, la cual identificó como voluminosa al expediente de SUMAC y evaluar una oferta presentada por Ortiz Cosme. Ese mismo día, la EPA concedió el término de prórroga solicitado y hasta el 13 de abril de 2023 para presentar la *Moción Conjunta* ordenada y la evaluación de la oferta.

Llegado el 13 de abril, Ortiz Cosme pidió una prórroga de veinte (20) días para evaluar la contraoferta y cumplimentar todos los asuntos y aspectos pendientes en el presente caso, incluyendo la elevación y presentación de la evidencia de las partes. Así se concedió el 14 de abril.

El 18 de abril, Molina Fonseca solicitó la imposición de desacato contra Ortiz Cosme. Arguyó que este incumplió con el pago de la semana del 28 de febrero, 3 de marzo y la pasada semana, o sea, debía de pensión regular trescientos noventa y cuatro dólares con ochenta y seis centavos ($394.86). Además, se había comprometido a pagar en dos (2) semanas a partir de dicha vista, la cantidad de trescientos siete dólares con treinta y nueve centavos ($307.39), de los gastos de matrícula del Colegio Gedalias del año escolar 2022-2023 y no había cumplido. Así también incluyó que se le habían remitido una serie de recibos de gastos médicos y académicos de la menor, los cuáles objetó

siendo gran parte de estos conocidos, totalizando doscientos diez dólares con noventa y dos centavos ($210.92), el cual correspondía a su cincuenta y cuatro por ciento (54%). Solicitó el pago inmediato de la cantidad debida de novecientos trece dólares con diecisiete centavos ($913.17) y se le impusiese una cantidad no menor de quinientos dólares ($500.00) de honorarios. En esa misma fecha, mediante otra moción, solicitó con carácter de urgencia, los estados bancarios del año 2017 y 2018 de Ortiz Cosme. Señaló que, a pesar de haber pasado años de litigación para una pensión que, había solicitado el propio Ortiz Cosme desde el año 2019 y que, hoy en día, seguía inauditamente siendo provisional, aun no se habían provisto. Afirmó que fue solicitado como parte del descubrimiento de prueba en el 2019, por lo que no necesitaba órdenes para que lo proveyera, sino que era el deber continuo de Ortiz Cosme de informar. Señaló que eran necesarios, pues Ortiz Cosme con el pasar de los años de litigación, mediante los estados bancarios que había provisto, se había observado como éste había reducido dramática y sustancialmente sus ingresos en más de la mitad y de los estados provistos surgía claramente duplicidad de servicios esenciales, lo que sugiere que no hay separación entre el individuo y la corporación.

El 20 de abril de 2023, el TPI ordenó la entrega inmediata de los estados bancarios de Ortiz Cosme para los años 2017 y 2018 a Molina Fonseca. Esto so pena de severas sanciones y le concedió a este, diez (10) días para mostrar causa por las cuales no se debe citar a vista de desacato o mostrar evidencia de pago. Ese mismo día, Molina Fonseca solicitó que el TPI permitiera que la menor continuase matriculada en el Colegio Gedalias para el próximo año 2023-2024, toda vez que había advenido en conocimiento que el Colegio Otoquí no contaba con enfermera, asunto tan importante ante la condición de salud de la menor.

El 21 de abril, Ortiz Cosme indicó que el TPI debía cumplir con la Regla 8.4 de Procedimiento Civil y darle a la parte veinte (20) días para responder a todas las mociones presentadas por Molina Fonseca. Ese mismo día, Molina Fonseca se opuso alegando que la Regla 68.2 de Procedimiento Civil le permitía al tribunal acortar los términos por justa causa y que en su poder de *parens patriae*, el Tribunal podía acortar los términos que entienda en pro de la justicia y la menor habida entre las partes, lo cual debía ser el norte del tribunal, pues se trataba del establecimiento justo de una pensión alimentaria para una menor con problemas serios de salud que se estaba tratando de establecer desde el año 2019 y su destino educativo. Sostuvo que conceder el término de veinte (20) días afectaría a la menor, pues se podría quedar sin cupo en el Colegio.

El 24 de abril, Ortiz Cosme informó al tribunal que estaba recibiendo mensajes intimidantes de Molina Fonseca y solicitó que se le ordenara cesar los mismos. Acompañó un email. Ese mismo día, Molina Fonseca presentó *Moción en oposición a orden de cese y desista y en solicitud de imposición de sanciones conforme orden del 20 de abril 2023*. Explicó que lo que reflejaba el email supuestamente intimidante era la desesperación de una madre de escasos recursos, con una menor con condiciones de salud serias, cuyo sostenimiento era sumamente caro y un padre con los recursos suficientes para suplir las necesidades de la niña y que de manera temeraria se oponía a asumir su responsabilidad. Arguyó que Ortiz Cosme había arrollado con este pleito a la demandada, quien se había endeudado hasta el tuétano, para poder tener una pensión que al menos cubriese las necesidades de la menor, teniendo Ortiz Cosme la capacidad económica para ello, siendo dueño de una lucrativa tienda de "scooters" y una gomera, anteponiendo sus necesidades a las de la menor. Explicó que el caso comenzó por radicación de Ortiz Cosme, cuando existía una pensión por años de manera extrajudicial donde éste pagaba doscientos

cincuenta dólares ($250.00) semanales, lo que resultaba en una pensión de mil ochenta y tres dólares ($1,083), mensuales y ahora pagaba una pensión provisional de la mitad, lo que evidentemente había perjudicado la calidad de vida de la menor, si a esto se le adicionaba el hecho de que, la menguada pensión, no la pagaba, creando desesperación en Molina Fonseca por la preocupación de cómo esto perjudicaba la salud de la menor. Por último, solicitó una sanción por incumplimiento en contra de Ortiz Cosme de quinientos dólares ($500.00) diarios a favor de Molina Fonseca, hasta tanto entregase los estados bancarios, más que ordenados por el foro y, declarase No Ha Lugar orden alguna de cese y desista.

El 24 de abril, el TPI aclaró que la orden no había sido dejada sin efecto y concedió diez (10) días a Ortiz Cosme para exponer por qué no se había cumplido.

El 25 de abril de 2023, la representación legal de Ortiz Cosme solicitó transferencia de las vistas señaladas ante la Examinadora de Pensiones, para el 1 de mayo de 2023, a las 10:00 am, y Vista de Litis Expensas, señalada para el 9 de mayo de 2023, a las 2:00 pm, ambas de manera presencial. Esto por encontrarse convaleciendo de una operación. Así las cosas, el TPI reseñaló para el 12 de junio de 2023.

El 27 de abril, Molina Fonseca volvió a solicitar las órdenes de manera que pudiera suplementar la prueba que surgió del descubrimiento de prueba; en aras de auscultar la solicitud de descorrer el velo corporativo de JJ Parts and Services LLC., por entender que, según surgía de parte de la prueba descubierta era un alter ego de José M. Ortíz Cosme. Arguyó que se había quedado pendiente la solicitud cuando el tribunal le ordenó buscar representación legal.

El 28 de abril, el TPI determinó que la orden de mostrar causa estaba en vigor, por lo que no se dejaba sin efecto en cuanto a los estados bancarios. Señaló que ese descubrimiento ya se había

ordenado con anterioridad. Otorgó diez (10) días para exponer por qué no se ha cumplido. Ese mismo día y a solicitud de Ortiz Cosme, la EPA suspendió la vista señalada para el 1 de mayo de 2023 transfiriéndola para el 14 de julio de 2023. En la misma fecha, Ortiz Cosme presentó *Moción informativa, en cumplimiento de orden y en réplica a moción de desacato de la parte demandada.* Sostuvo que Molina Fonseca inducía a error al tribunal y acompañó una serie de recibos de pago alegando que estos representaban el pago de las obligaciones de Ortiz Cosme. En esa misma fecha, Ortiz Cosme también presentó *Moción en cumplimiento de orden en cuanto a estados bancarios solicitados por la parte demandada.* Por primera vez adujo que no se negaba a entregar los estados de cuenta, pero que estos tenían un costo de sobre mil dólares ($1,000.00) que debía pagar Molina Fonseca, ya que él había pagado muchos gastos, incluso los estados de ella, por lo que no podía costearlos.

El 1 de mayo de 2023, Molina Fonseca presentó *Moción en cumplimiento de orden y urgente réplica en solicitud de orden para matricular la menor.* Sostuvo que las dos alternativas escolares sugeridas por el padre como alternativa al Colegio Gedalias eran inadecuadas. Una por estar muy remota, en Naranjito, y otra por no tener el personal de enfermería necesario para las necesidades de la menor, además de ser una institución católica que no era la religión que practicaba la menor; y no contar con currículos híbridos, ni tecnología para acceso a tareas, en caso de que la menor por su asunto de salud, como había ocurrido, tuviese que ausentarse en periodos prolongados. Indicó que el demandante alegaba que el Colegio Gedalias era uno de altos costos, el cual no podía costear; no obstante, había recomendado el Colegio Otoquí, el cual era más caro que el colegio donde se encontraba la menor. Acompañó con otra moción una carta de la endocrinóloga del año 2021 donde, entre otras, confirmaba que el cambio de escuela podía afectar la condición de salud de la menor.

El 1 de mayo de 2023 y, en un cambio de postura en cuanto a los estados financieros de Ortiz Cosme, el TPI indicó que la parte debía permitir el acceso a los mismos y el costo por ser uno alto, lo pagaría quien lo solicitara. Esto, además, por ser unos anteriores a los tres (3) años permitidos del 2023. Además, ordenó se matriculara o mantuviera a la menor en el Colegio Gedalias para el año escolar 2023-2024.

El 5 de mayo de 2023, Ortiz Cosme se opuso a que se expidiesen las órdenes para descorrer el velo corporativo de la Corporación JJ Parts and Services, LLC. Alegó que si se autorizaban las mismas debía hacerse los mismos con las que él había solicitado. El 8 de mayo de 2023, el TPI indicó que, vista ambas solicitudes, el Tribunal no permitiría más descubrimiento. Molina Fonseca presentó una reconsideración. Sostuvo que el 8 de mayo de 2023, el foro había determinado que no habría más descubrimiento de prueba y lo había dado por terminado; en respuesta, a que la parte demandante, sin razón ni fundamento alguno, solicitó unas órdenes a destiempo, como respuesta a un escrito que radicara la parte demandada para la emisión de unas órdenes que ya el Tribunal había autorizado desde el 13 de febrero de 2023. Alegó que las órdenes concedidas a favor de Molina Fonseca eran finales y firmes, mucho antes del 8 de mayo y se habían perdido en la avalancha de escritos presentadas por Ortiz Cosme. Reconsideración que fue rechazada por el foro el 24 de mayo.

El 15 de mayo de 2023, Ortiz Cosme solicitó reconsideración de la orden de matricular la menor en el Colegio Gedalias alegando no poder cumplir con el pago. Ese mismo día, Molina Fonseca informó al tribunal que la menor estaba ya matriculada y que Ortiz Cosme se negaba a pagar su parte. Ese mismo día, el tribunal rechazó la reconsideración de Ortiz Cosme sobre el colegio de la menor.

El 30 de mayo, Ortiz Cosme informó al tribunal haber cargado la evidencia necesaria para la vista en SUMAC. No obstante, nuevamente, el 8 de junio de 2023, la representación legal de Ortiz Cosme presentó

moción en la que adujo que no podía asistir a la vista de *litis expensas,* señalada para el 12 de junio de 2023, a las 2:00 pm, de manera presencial, por tener un juicio en su fondo por jurado señalado para el mismo día, el 12 de junio de 2023 a la 1:30 pm, por lo que requería la transferencia de la vista.

El 9 de junio de 2023, el TPI reseñaló para el 4 de agosto de 2023. Finalmente, la vista de alimentos se celebró el 14 de julio ante la EPA. Ante el incumplimiento de ambas partes con la moción conjunta, la EPA concedió hasta el 14 de agosto de 2023 para presentarla. La vista final de alimentos quedó señalada para el 19 de octubre de 2023. No obstante, a base de la prueba presentada hasta ese momento, la EPA determinó recomendar una pensión alimentaria mensual provisional de mil dólares con treinta y cuatro centavos ($1,000.34), que se pagaría de forma directa a Molina Fonseca semanalmente por la cantidad de doscientos treinta dólares con ochenta y cuatro centavos ($230.84), mediante ATH móvil. Además, las partes compartirían los gastos médicos que no cubriera el plan, por reembolso, en la siguiente proporción; setenta y dos por ciento (72%) Ortiz Cosme y veintiocho por ciento (28%) Molina Fonseca. Reconociendo que el plan médico era pagado por el hermano de Molina Fonseca. Por último, en igual proporción, las partes compartirían todos los gastos extraordinarios requeridos, ya fuesen de salud (que no sean los deducibles ordinarios), gastos escolares u otros. Recomendó, ante el reiterado incumplimiento con la moción conjunta ordenada desde el 26 de enero de 2022, se impusieran sanciones económicas a las partes. Así mismo sugirió que la deuda por el efecto retroactivo de la pensión alimenticia se determinaría en la vista final de alimentos y los honorarios de abogado de igual manera. Así lo acogió el TPI el 31 de julio, quien incluso impuso a las partes trescientos dólares ($300.00) como sanción económica por no haber presentado la moción conjunta y advirtió que impondría sanciones adicionales de no presentarla nuevamente.

El 14 de agosto, Ortiz Cosme presentó un *Memorando de Derecho en apoyo a su oposición a la solicitud de gastos de honorarios de la parte demandada.* Sostuvo que era la demandada, quien había dilatado los procedimientos con el continuo cambio de representaciones legales y postulando por su cuenta, lo que surgía claramente del expediente del Tribunal. Señaló que dejar que la parte demandada determinara cantidades exorbitantes de honorarios de abogado y pretender que el demandante las pague, no era justo y era improcedente, más aún cuando no solicitó el auxilio del Tribunal, para que le asignaran abogado. Reclamó que la actitud de Molina Fonseca era tal que, hasta dos de sus representaciones legales, le habían renunciado por diferencias irreconciliables. Sostuvo que no era razonable, entonces, que Ortiz Cosme tuviera que acarrear con las consecuencias de las decisiones y acciones de Molina Fonseca, al contratar representaciones legales y luego pretender que el demandante fuera quien pagara los gastos de honorarios originados por la misma. Señaló que Molina Fonseca testificó que sus padres y hermano le prestaron dinero para pagar abogados y no sabía cantidad ni los trajo como testigos. Trajo a colación que, en muchas ocasiones, intentó llegar a acuerdos razonables con la parte demandada, sin embargo, esta no aceptó ninguna de las propuestas. Arguyó que Ortiz Cosme tiene sus propios gastos de honorarios de abogados, en vista de todo lo expuesto y tomando en consideración la larga trayectoria del caso, y los múltiples escritos que se habían tenido que presentar, ocasionado por la temeridad de la demandada y la actitud temeraria de esta, la cual había retrasado los procesos innecesariamente, que a quien le correspondía solicitar *litis expensas* era a Ortiz Cosme y así lo solicitaba, por la cantidad de veinticinco mil dólares ($25,000.00). Además, señaló que fue él quien inició el caso, por lo que le correspondía *litis expensas* a su favor. Reclamó que Molina Fonseca no había demostrado que no podía trabajar, ni había sustentado la indigencia alegada, por lo que no

procedía la solicitud de gastos de honorarios en su contra, además de ser prematuro por desconocer qué parte prevalecería. Nuevamente reiteró que Molina Fonseca había tenido la oportunidad de beneficiarse de los servicios gratuitos de pro bono y servicios legales o asignación de abogado. En fin, resaltó que sería algo irrazonable imponerle a Ortiz Cosme, el pago de once mil seiscientos un dólar con sesenta centavos ($11,601.60), por una representación legal que Molina Fonseca eligió y decidió contratar.

El 14 de agosto, Ortiz Cosme presentó otra reconsideración. Sostuvo en cuanto a la sanción de trescientos dólares ($300.00) que del expediente del caso surgía, lo complicado que se había tornado el mismo y los diferentes cambios de representaciones legales que había tenido la parte demandada en el transcurso de este caso, lo que retrasó los procesos y había influido en que no se hubiese podido presentar la Moción Conjunta ordenada. Adujo, además, la situación del padre de su representación legal y su intervención quirúrgica. En cuanto a la pensión alimentaria sostuvo que, como Molina Fonseca no había demostrado que no podía trabajar, se le debía imputar el último salario devengado. Este último argumento en total menosprecio a lo que disponen las Guías Mandatorias.

Finalmente, el 14 de agosto de 2023, las partes presentaron la *Moción Conjunta.* El 15 de agosto, el TPI redujo la sanción a cincuenta dólares ($50.00). En cuanto a la petición sobre tomar como el último salario el devengado por la demanda mientras trabajaba, por no ser la realidad al presente, el foro la declaró NO HA LUGAR. El 4 de agosto de 2023, el tribunal celebró la vista de *litis expenses.*

El 17 de agosto de 2023, Molina Fonseca, en cumplimiento con la orden del tribunal, presentó *Moción en cumplimiento de orden y en oposición a memorando de derecho.* Sostuvo que el propio Código Civil establecía que el alimentista tenía derecho a solicitar una cuantía específicamente por gastos de litigio, al margen de los honorarios de

abogado a los que tenía derecho, según la ley a solicitar. Así expuso que, del expediente judicial y del propio escrito del que se replica, surgía de que la demanda incoada se había presentado existiendo ya una pensión acordada que sufragaba las necesidades de la menor habida entre las partes, quien contaba con unas serias condiciones de salud. Que por la unilateral interpretación de Ortiz Cosme de un acuerdo que llevaba más de tres años cumpliendo, donde según éste eran mil dólares ($1,000.00) y no mil ochenta y tres dólares con treinta y tres centavos ($1,083.33); es decir por una diferencia de ochenta y tres dólares ($83.00), cantidad que no era sustancial para una modificación de pensión, se había presentado el litigio. Llamó la atención del tribunal a una revisión del expediente para que pudiera constatar la gran cantidad de los escritos radicados, órdenes emitidas y vistas celebradas que se debían al incumplimiento reiterado de Ortiz Cosme con el descubrimiento de prueba que, al final nunca cumplió, deudas por incumplimiento de pensión alimentaria y gastos médicos de la menor, entre otros asuntos, que siempre habían enfrentado la oposición reiterada de Ortiz Cosme con una litigación inflexible y entorpecedora de los procedimientos. Recordó las veces que el tribunal le impuso sanciones y las prórrogas para discutir ofertas generadas por Molina Fonseca, que quedaron en nada. Sostuvo que, en este caso, la pensión se impondrá a favor del alimentista, es decir de Molina Fonseca, así que no cabe duda de que, la parte que prevaleció sería la menor en este caso, quien estaba bajo la custodia de Molina Fonseca. Además, recalcó que las Reglas de Procedimiento Civil proveen para que antes de que culmine el pleito se pudiesen imponer costas, que no era otra cosa que gastos de litigio, máxime cuando hubo demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia por parte de Ortiz Cosme quien había continuado litigando un asunto de alimentos por casi cuatro (4) años. En cuanto a la razonabilidad a la que aludía la parte demandante,

llamó la atención al foro sobre que dicha parte solicitaba que se le impusiesen veinticinco mil dólares ($25,000.00) a Molina Fonseca por concepto de "litis expensas", lo cual era contrario a sus propios argumentos de que alegadamente no procedían imponerse en este tipo de caso conforme su propia solicitud, procedían dichos gastos a favor de la parte demandada, pero sí a la parte demandante. Para Molina Fonseca, la cantidad de veinticinco mil dólares ($25,000.00), solicitada por Ortiz Cosme, probaba que la cantidad solicitada como gastos de litigio por ella era razonable, correspondiente a una litigación extensa y contenciosa de aproximadamente cuatro (4) años; así que de los propios argumentos de Ortiz Cosme surgía la razonabilidad de las cuantías pagadas, evidenciadas y solicitadas como gastos de litigio. Señaló que evidenció con prueba testifical y documental los gastos innecesarios a los que se había visto compelida asumir por la temeridad y contumacia de Ortiz Cosme en dicho pleito; prueba de la que tuvo la oportunidad de refutar Ortiz Cosme mediante prueba testifical y/o documental limitándose este a realizar un mínimo contrainterrogatorio y no presentar prueba a su favor que controvirtiera la prueba admitida en evidencia, en favor del reclamo de *litis expensa.* Afirmó que agotó las alternativas gratuitas que tuvo a su haber disponibles para litigar el asunto que, Ortiz Cosme rechazó resolver rápida y económicamente; testificó sobre las gestiones extrajudiciales y cómo, Ortiz Cosme, le manifestó "que todo asunto debía ser atendido entre los abogados", afirmando que no fue controvertido por Ortiz Cosme en la vista, puesto que así ocurrió.

El 21 de agosto de 2023, mediante Resolución y Orden, el TPI en su sana discreción y luego de haber tenido todos los elementos ante sí, declaró HA LUGAR la solicitud de gastos de litigio y, por ende, según la prueba sometida, ordenó a Ortiz Cosme sufragar la cantidad de treinta y un mil seiscientos veinticinco dólares ($31,625.00) por concepto de gastos de litigio y la cantidad de mil dólares ($1,000.00) en concepto de

honorarios de abogado por la celebración de la referida vista de manera inmediata.

El 28 de agosto, Ortiz Cosme satisfizo los mil dólares ($1,000.00) en honorarios de abogado. Ese mismo día solicitó reconsideración del salario imputado a Molina Fonseca. El 29 de agosto de 2023, el tribunal se reiteró en su determinación. El 31 de agosto, Ortiz Cosme presentó reconsideración relacionada a los *litis expenses* concedidos por el foro. El 1 de septiembre, el TPI la declaró no ha lugar. El 29 de septiembre, Ortiz Cosme hizo constar que nuevamente había presentado un recurso ante el tribunal apelativo.

El 12 de octubre de 2023, Ortiz Cosme volvió a pedir la transferencia de la vista de alimentos, la cual estaba señalada para el 19 de octubre. Esta vez, la representación legal justificó su petición en que convalecía por órdenes médicas de una bronquitis y que su padre requería de cuidados especiales. El nuevo señalamiento se pautó para el 27 de noviembre de 2023.

El 13 de noviembre de 2023, Molina Fonseca presentó *Moción en solicitud de desacato*. Reclamó que Ortiz Cosme debía, mediante reembolso por gastos médicos y académicos, la cantidad de dos mil novecientos sesenta y tres dólares con cuarenta y cuatro centavos ($2,963.44), a octubre 2023. Solicitó el reembolso inmediato y la imposición de honorarios. El 21 de noviembre, Ortiz Cosme replicó, sostuvo que Molina Fonseca tergiversaba la realidad. Explicó que del mismo expediente judicial se desprendía que, en la vista celebrada el 11 de julio de 2022, la demandada reclamó una deuda a mayo de 2022 de cuatro mil doscientos sesenta y seis dólares con setenta y seis centavos ($4,266.76, la cual había saldado en su totalidad, a pesar de tener objeción a la misma. Sostuvo que no tenía recibos de Molina Fonseca, solo había recibido recetas médicas. Informó al tribunal que Molina Fonseca le había enviado unas facturas de unos comercios que no eran reales, pues algunas compras se habían cancelado y otras eran

lay-away, que no se habían acabado adquiriendo. Arguyó que no procedía el reembolso por gastos que no se efectuaron, que los recibos no estuviesen claros y que no pudiese evidenciarse que les correspondían a gastos de la menor.

Así las cosas, el 26 de noviembre, Ortiz Cosme, mediante moción, pidió al foro que se reabriera el descubrimiento de prueba a raíz de los reembolsos solicitados por Molina Fonseca. El 1 de diciembre, Molina Fonseca se opuso, explicó cada uno de los recibos cuestionados y afirmó que la estrategia de Ortiz Cosme era seguir dilatando la vista final con frivolidades, cosa que logró con los señalamientos de los recibos y por lo cual pidió se impusieran honorarios de abogado a su favor, toda vez que la moción objetando los recibos se había presentado un día antes de la vista del 27 de noviembre y había logrado obstaculizar la misma. El TPI no lo autorizó.

El 27 de noviembre de 2023 se llevó a cabo la vista ante la EPA. Nuevamente, no se pudo llevar a cabo la vista final, pues había una moción radicada el día anterior, que el juez no había atendido. No obstante, las partes informaron que no existía controversia sobre los siguientes asuntos: 1) la menor estaba bajo la custodia de Molina Fonseca, 2) la menor padecía de diabetes mellitus, 3) la menor estaba matriculada en la escuela privada Gedalias, lo que conllevaba gastos de matrícula anual, libros, uniformes, materiales, efectos y mensualidad escolares, 4) el canon de arrendamiento y la cuota de mantenimiento donde residía la menor con Molina Fonseca. Por otro lado, las partes informaron que existía controversia sobre los siguientes gastos: 1) la cuantía de los gastos médicos no cubiertos por el plan médico asociados a la condición de la cual padece la menor, 2) el ingreso de ambas partes, 3) Molina Fonseca pidió que Ortiz Cosme aportara al plan médico de la menor, toda vez que lo pagaba la familia materna, 4) Ortiz Cosme solicitó el listado de medicamentos de la menor, a lo que Molina Fonseca se comprometió a brindar en cinco (5)

días. La EPA apercibió que no se autorizarían más suspensiones y señaló la vista final para el 5 de febrero de 2024.

El 1 de diciembre, Molina Fonseca presentó *Réplica y reiterada solicitud de desacato*. Hizo un recuento de que el 25 de enero de 2023, la Lcda. Bulá, antes de retirarse del caso, le sometió a Ortiz Cosme una serie de recibos de gastos médicos y académicos los cuales no respondió. Entonces, estando Molina Fonseca representándose por derecho propio, la representación legal de Ortiz Cosme el 1 de marzo de 2023, le envía una carta objetando 24 de los 36 recibos e indicando unilateralmente que su representado solo le correspondía pagar doscientos cuarenta y siete dólares con ochenta y siete centavos ($247.87) sobre gastos médicos y escolares de agosto de 2022 a enero 2023. Molina Fonseca respondió, mediante comunicación, aclarando los recibos y su procedencia y fundamentando correctamente que procedía el reembolso de los mismos, gastos que Ortiz Cosme se había opuesto a pagar; alegó que las solicitudes se perdían en el proceso, cuando Ortiz Cosme radicaba otras cosas, que no tenían relación con lo que se estaba atendiendo en el momento y resultaba que, a casi un (1) año de la solicitud, seguía solicitando el desacato por impago de los gastos suplementarios académicos y médicos de la menor por ese periodo. Reiteró que la cantidad correcta era de dos mil quinientos veintidós dólares con tres centavos ($2,522.03) y poseía los recibos para probarlo. Sobre la deuda que Ortiz Cosme reclamaba haber pagado, aclaró que era una deuda vieja, que pagó de manera atrasada y con múltiples órdenes para lograr su cumplimento, que nada tenía que ver con la deuda que se reclama, dicha deuda era una más vieja, que comprendía hasta julio 2022.

El 7 de diciembre de 2023, Ortiz Cosme presentó *Moción informativa y en solicitud de remedio*. Sostuvo que Molina Fonseca y su madre le habían hecho comentarios despectivos de su abogada. Solicitó que el foro emitiera una orden para que Molina Fonseca y su madre se

abstuvieran de hacer comentarios innecesarios, que nada aportaban positivo al caso, por el contrario, que se dirigiesen con respeto y cordialidad al tratar con las otras partes de este caso, inclusive con sus representaciones legales, cesando esta conducta impropia, esto para propiciar un mejor ambiente de respeto y evitar futuros conflictos, evidenciando así las buenas formas, que debían prevalecer.

El 19 de diciembre, Molina Fonseca replicó. Explicó que los mensajes lo que reflejaban era una madre llamando a la conciliación y a la lógica, pues el padre lleva litigando el que se estableciera una pensión hacía cuatro (4) años, más baja de lo que pagaba y sus posibilidades, lo que había generado gastos absurdos de litigación que bien pudieron ser empleados en mejorar la calidad de vida y salud de la menor. Sostuvieron que el proceder de la representante legal de Ortiz Cosme de radicar mociones estériles como la que replicaba, lo que hacía era innecesariamente enardecer los ánimos entre las partes, aumentar costos legales contestando alegaciones tergiversadas, lo que en nada ayudaba, pues Anabelle Fonseca no era parte del pleito para pedir órdenes en su contra, además de que negó enfáticamente lo alegado por Ortiz Cosme.

El 18 de diciembre, Ortiz Cosme pidió una reconsideración en cuanto al descubrimiento de prueba y solicitó se volviese a abrir el mismo. Ese mismo día, el TPI la declaró sin lugar. El 19 de diciembre, Ortiz Cosme, mediante *Moción informativa y en constancia,* insistió en el descubrimiento de prueba.

Por su parte, Molina Fonseca, el 21 de diciembre insistió en que el TPI llevara a cabo una vista de desacato sobre los desembolsos de gatos médicos y escolares. Reclamó que se había quedado pendiente de adjudicación. Sostuvo que debía señalarse vista al efecto, para evidenciar los gastos pendientes.

El 22 de diciembre de 2023, Molina Fonseca presentó *Réplica a "moción informativa y en constancia" y solicitud de orden.* Esta con

relación a la solicitud para que se abriera el descubrimiento de prueba presentada por Ortiz Cosme y los señalamientos sobre la solicitud de los reembolsos. Señaló que los anejos que Ortiz Cosme sometía con su escrito eran recibos que correspondían a información que éste había solicitado el año pasado, cuando en una actuación engañosa, manifestó asumiría capacidad económica. Así explicó que dichos recibos eran del año 2022 y corresponden a evidenciar unos gastos en ese concepto, pero que no todo lo que estaba en esos recibos se le estaba solicitando reembolso y eso era conocido por la Lcda. Melba Ramos Aponte, quien acudía al foro con las manos sucias. Reclamó que los recibos de Costco no estaban completos, faltaban las recetas que se le enviaron junto al recibo, el recibo del detergente se envió como parte de la solicitud de éste de que asumiría capacidad económica, esto es un recibo del descubrimiento de prueba. Manifestó como una falta de respeto que se diga que se le solicitó reembolso o peor aún que éste pagó por cosas que no debía pagar, pues bien, la Lcda. Ramos Aponte sabía que no era cierto. Continuó explicando que el recibo de Sam's, que se alega estaba cancelado, de haberse abierto el recibo completo, no doblado, hubiese notado que sí hubo un pago realizado, no como se alegaba. El recibo de City Office era de material escolar de la menor, recibo de Walgreens, se había enviado receta, Descubra Health Food, no se solicitó reembolso, sino que se había enviado como parte del descubrimiento de prueba, cuando el demandante indicó que asumiría capacidad económica. Así explicó otros recibos cuestionados y reiteró su petición de una vista evidenciaria para resolver el asunto.

El 27 de diciembre, Ortiz Cosme se reiteró mediante moción, en que el tribunal debía ordenar a la madre de Molina Fonseca no hacer comentarios contra su representación legal y que los gastos de litigación generados en el caso, según ya había expresado, habían sido producto de la insistencia de Molina Fonseca de solicitar y alegar reembolso de gastos, que no le correspondían a Ortiz Cosme.

El 5 de febrero de 2024 se celebró la vista final de alimentos ante la EPA. **Las partes llegaron a un acuerdo sobre la pensión, esta sería de mil doscientos cincuenta dólares ($1,250.00) mensuales, efectiva al 2 de diciembre de 2019.** Se pagaría los primeros cinco (5) días de cada mes directamente a Molina Fonseca hasta tanto se abriese la cuenta en ASUME. El primer pago sería el 6 de febrero de 2024. Dicho monto incluiría la pensión básica, aportación para el gasto de vivienda, aportación para los gastos médicos no cubiertos por el plan médico relacionados al mantenimiento mensual de la condición de diabetes de la menor, aportación para la mensualidad escolar y aportación para el plan médico del cual se beneficia la menor. Además, las partes compartirán el setenta y dos por ciento (72%), el padre, Sr. José Ortiz Cosme y el veintiocho por ciento (28%), la madre, Sra. Xavianna Molina Fonseca de los gastos médicos no cubiertos por el plan médico que no estén incluidos dentro del pago mensual de la pensión alimenticia corriente, mediante reembolso. Así también, las partes compartirán al setenta y dos por ciento (72%) el Sr. José Ortiz Cosme y al veintiocho por ciento (28%) la Sra. Xavianna Molina Fonseca, todos los gastos extraordinarios escolares por concepto de matrícula, uniformes, libros, materiales y efectos escolares y cuotas, mediante reembolso también. Por último, las partes compartirán al setenta y dos por ciento (72%) el Sr. José Ortiz Cosme y al veintiocho por ciento (28%) la Sra. Xavianna Molina Fonseca, todos los gastos extraordinarios requeridos, ya sean de salud (que no sean los deducibles ordinarios), gastos escolares u otros. Estos gastos extraordinarios requeridos eran aquellos que, como su nombre lo indica, son necesarios y así lo solicita, ya sea un facultativo médico, una institución educativa o un proveedor de un servicio. Este último concepto de gastos presupone que ambos padres consintieron que su hija participara o acudiera al facultativo, institución o proveedor de servicio. Las partes compartirán el setenta y dos por ciento (72%), el

padre, Sr. José Ortiz Cosme, y el veintiocho por ciento (28%), la madre, Sra. Xavianna Molina Fonseca, los gastos extraordinarios electivos ya sean de salud (que no sean los deducibles ordinarios), de educación u otros, siempre y cuando los mismos hayan sido autorizados y aprobados por ambas partes antes de incurrir en el mismo. Estos gastos eran aquellos que no eran requeridos, pero las partes elegían que la menor participara del mismo. La deuda por el efecto retroactivo de la pensión alimenticia se estableció en veintitrés mil trescientos noventa y un dólares con diecinueve centavos ($23,391.19), incluyendo el periodo del 2 de diciembre de 2019 al 31 de enero de 2024. Se estableció que se saldaría de la siguiente manera: el 1 de marzo de 2024, el Sr. José Ortiz Cosme haría un primer pago por once mil seiscientos noventa y cinco dólares con cincuenta y nueve centavos ($11,695.59) y el 1 de junio de 2024 haría un segundo pago por once mil seiscientos noventa y cinco dólares con cincuenta y nueve centavos ($11,695.59). Por último, se concedieron honorarios de abogado a favor de la Sra. Xavianna Molina Fonseca. Dichas recomendaciones de la EPA fueron acogidas por el Juez el 9 de febrero de 2024.

El 22 de febrero de 2024, Molina Fonseca presentó *Moción en solicitud de prórroga y reconsideración*. Solicitó que el foro reconsiderara los quinientos dólares ($500.00) que había concedido en honorarios por la cantidad de ocho (8) vistas de alimentos celebradas, mediante las cuales la demandada compareció representada de abogado en un litigio que comenzó en el año 2019 y se litigó de manera contenciosa por cuatro (4) años. Ortiz Cosme se opuso. Indicó que la representación legal actual de Molina Fonseca solo había acudido a ocho (8) vistas y, no era justo imponer otro pago a Ortiz Cosme de honorarios, toda vez que ya se le había impuesto y los había pagado. Arguyó que quien había instado la reclamación era Ortiz Cosme y no se le podía seguir ahogando. Sobre la prórroga solicitada se opuso, por entender que la pensión se había estipulado.

El 29 de febrero de 2024, el TPI rechazó aumentar la cuantía de honorarios. No obstante, mediante Resolución, conforme orden de Tribunal de Apelaciones y el mandato de este foro en el KLCE202301084 declaró ha lugar la solicitud de gastos de litigio y en base a la prueba recibida y el tracto altamente contencioso del caso atribuido a Ortiz Cosme le impuso la cantidad de quince mil dólares ($15,000.00) por concepto de gastos de litigio y mil dólares ($1,000.00) en concepto de honorarios de abogado, por la celebración de la referida vista evidenciaria, los cuales debía satisfacer de inmediato. Basó su cómputo en ciento cincuenta (150) horas servicio a razón de cien dólares ($100.00) la hora. La ley contempla la obligación del padre no custodio a sufragar los gastos incurridos por desacato o incumplimiento de pensión alimentaria. Resaltó el foro en su resolución que, las horas otorgadas, eran un mínimo que bajo la prueba y lo extenso del expediente se podía establecer como trabajado. Además, consignó haber estimado el valor hora requerido en el servicio de la abogacía.

El 8 de marzo de 2024, Ortiz Cosme reiteró que se dejara sin efecto el desacato, toda vez que Molina Fonseca no había podido cumplir con su obligación de actualizar la deuda.

El 14 de marzo de 2024, Ortiz Cosme solicitó la reconsideración de los honorarios de abogado. Sostuvo que la licenciada Mariana Bulá, una de las representaciones legales de la demandada y de la cual se presentó la facturación más alta por concepto de honorarios de abogado, representó a la recurrida por aproximadamente ocho (8) meses, un espacio de tiempo sumamente corto, en comparación con la cantidad facturada por los servicios legales. Sostuvo que debía reclamar a base de la doctrina de *quantun meriut* el valor razonable de los servicios prestados. Afirmó que la parte demandante reiteraba el hecho de que la parte demandada no pudo establecer la cuantía de los gastos extraordinarios innecesarios en los que tuvo que incurrir.

Además, la demandada declaró que pidió préstamos a sus familiares para pagar los gastos del litigio, sin embargo, no existía constancia del dinero que ésta alegó que recibió de sus familiares, ni presentó el testimonio de éstos, ni pudo contestar ni evidenciar cuánto dinero le prestaron, ni para qué lo utilizó. Por lo que, conforme el principio de proporcionalidad, las tarifas legales deberían ser proporcionales a la naturaleza y complejidad del caso. La cantidad impuesta, superaba claramente los costos y la magnitud del asunto, por lo que resultaba sumamente alta e insostenible. Solicitó que reconsideraran la determinación de que el demandante pagase los gastos de litigio por la cantidad de treinta y un mil seiscientos veinticinco mil dólares ($31,625.00) y los otros mil dólares ($1,000.00) impuestos y le ordenase a la parte demandada a hacerse responsable del pago de dichos gastos, máxime cuando es prematuro dicho dictamen, no habiendo culminado este litigio y no siendo originado por ésta, el pleito en proceso y habiendo el demandante solicitado fijación de honorarios a su favor, no existiendo al día de hoy dictamen al efecto. El 15 de marzo de 2024, el TPI declaró la reconsideración sin lugar.

## II

Constituye política pública del Estado Libre Asociado de Puerto Rico que los padres o las personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos. Véase, Exposición de Motivos, Ley Orgánica de la Administración Para el Sustento De Menores, Ley Núm. 5 de 30 de diciembre de 1986. 8 LPRA sec. 501 nota et seq. Este constituye un derecho de raigambre constitucional como parte esencial del derecho a la vida consagrado en la Sec. 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1; *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 738 (2009); *McConnell v. Palau*, 161 DPR 734, 745 (2004); *Martínez v. Rodríguez*, 160 DPR 145, 151 (2003). No solo es un deber moral, sino que, además, se trata de un deber jurídico que, en nuestra jurisdicción,

ha sido consagrado en varios de los artículos de nuestro Código Civil, así como en la Ley Orgánica de la Administración Para el Sustento De Menores. *Martínez v. Rodríguez*, supra, pág. 152. A través de la Ley Núm. 5, *supra*, el Estado creo un procedimiento judicial expedito, que brinda protección al mejor interés y bienestar del menor mediante trámites rápidos y eficientes de fijación, modificación y cobro de pensiones alimentarias para que los progenitores alimentantes cumplan la responsabilidad que tienen con sus hijos. *Martínez v. Rodríguez*, supra, págs. 152-153; R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Ed. Publicaciones JTS, 2000, T. II, pág. 567.

Además, y en lo pertinente a nuestra controversia, Ley Orgánica de la Administración Para el Sustento De Menores contempla la imposición de Honorarios de Abogado de Abogado como parte del proceso. A tales efectos, dispone en su Art. 22 que:

> (1) En cualquier procedimiento bajo esta Ley para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca. (2) El tribunal, o el Juez Administrativo podrá imponer al alimentante el pago de honorarios de abogado a favor del alimentista al fijarse una pensión provisional. (3) En el caso en que las partes estén casadas entre sí y uno de los cónyuges controle la totalidad o la mayor parte de los bienes líquidos de la sociedad de gananciales, el tribunal, o Juez Administrativo ordenará al que controla los bienes conyugales el pago inmediato de honorarios de abogado razonables al otro cónyuge, según solicitados. 8 LPRA sec. 521.

De igual manera, el Código Civil de 2020 contempla una partida razonable para sufragar los gastos del litigio y honorarios de abogado, cuando el alimentista se vea obligado a ir a un tribunal o a iniciar un proceso administrativo para reclamar su derecho a los alimentos. 31 LPRA sec. 7534.

Inclusive la imposición de los **honorarios** de abogado a favor de los menores en una acción para reclamar **alimentos** procede sin la

necesidad de que actúe con temeridad el demandado al defenderse de la reclamación. *Torres Rodríguez v. Carrasquillo Nieves*, supra, pág. 740; *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1035 (2010); *Chévere Mouriño v. Levis Goldstein*, 152 DPR 492 (2000). Incluso, aun cuando el alimentista esté representado por una organización de asistencia legal a indigentes. *Torres Rodríguez v. Carrasquillo Nieves*, supra, pág. 741; *Semidey v. Tribunal Superior*, 99 DPR 705, 707 (1970).

La imposición obedece a que la negación de esos fondos en un pleito por alimentos privaría al alimentista, o a su representante o guardián, de los recursos económicos necesarios para reclamar y hacer efectivo su derecho. Incluso, podría comprometer la pensión alimenticia para atender el reclamo de pago del representante legal. *Torres Rodríguez v. Carrasquillo Nieves*, supra; *Rodríguez Avilés v. Rodríguez Beruff*, 117 DPR 616, 621 (1986); *Milán Rodríguez v. Muñoz*, 110 DPR 610, 612–614 (1981).

Ha de quedar claro que no es indispensable para conceder los honorarios de abogados que efectivamente el alimentista los haya desembolsado previamente a un abogado, sino que lo que se persigue y es trascendentalmente importante es compensar las dificultades que sufre el alimentista al tener que reclamar judicial o administrativamente los alimentos a quien tiene la obligación moral y legal de suministrarlos. *Torres Rodríguez v. Carrasquillo Nieves*, supra, pág. 742. Véanse, *Chévere Mouriño v. Levis Goldstein*, supra.

De hecho, en *Torres Rodríguez v. Carrasquillo Nieves*, supra, pág. 743, el Tribunal Supremo de Puerto Rico establece, sin ambages que "nuestro ordenamiento establece que los honorarios de abogado no pertenecen al abogado, sino al litigante, quien dará a la cuantía concedida por ese concepto el destino que desee. De ahí que la parte peticionaria tiene el derecho a reclamar y a recibir una partida razonable por honorarios, sobre todo, si efectivamente quiere destinarlos a satisfacer las facturas que, por tal concepto, le presentó

su representante legal en ese tiempo. Es decir, una parte que haya tenido que incurrir en gastos para reclamar lo que, a fin de cuentas, es un derecho, tiene el mismo derecho a recuperar lo que gastó." (Énfasis nuestro).

Ahora bien, los honorarios de abogado a los cuales tiene derecho el alimentista deben regirse por el criterio de la razonabilidad. *Torres Rodríguez v. Carrasquillo Nieves*, supra. Como consecuencia de ello, no procede intervenir con los honorarios de abogado que conceda el foro primario, salvo que la suma concedida sea irrazonable. *Llorens Becerra v. Mora Monteserín*, supra, pág. 1035.

Para evaluar la razonabilidad de los honorarios, el tribunal podrá considerar, entre otros factores: 1) la extensión del pleito, 2) la complejidad del caso, 3) los trámites procesales acaecidos en el mismo, 4) el mérito relativo de las posturas de las partes, 5) el resultado del litigio, 6) la naturaleza de la conducta de las partes, 7) las circunstancias financieras de las partes y la capacidad de ingresos de estas. *Neny v. Neny*, 989 So. 2d 565 (Ala. Civ. App. 2008); *Yezzi v. Small*, 206 A.D.3d 1472, 170 N.Y.S.3d 712 (3d Dept. 2022).

**III**

La razonabilidad de los honorarios concedidos por el Tribunal de Primera Instancia es una cuestión de hechos a ser determinable tomando en consideración las circunstancias particulares de cada caso. Es por tal razón que, hemos creído prudente consignar en esta sentencia, el largo y azaroso trámite procesal que distingue este litigio, en donde una menor con una condición de salud seria se vio privada de la pensión que le correspondía por cuatro (4) largos años.

Como anticipamos, la determinación del foro en cuanto a la imposición de honorarios es discrecional y no intervendremos con la misma, a menos que observemos un abuso de discreción. Un tribunal de justicia incurre en abuso de discreción, entre otras y en lo pertinente, "cuando el juez, en la decisión que emite, no toma en cuenta

e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario, el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante, considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos". *García v. Asociación,* 165 DPR 311, 322 (2005).

Un análisis detallado y minucioso de la totalidad del expediente del TPI, nos lleva a concluir que ambas partes han actuado de manera irrazonable, opresiva e irresponsable en un asunto tan medular para la hija de ambos. Nos referimos a que ambas partes han solicitado las posposiciones de vista, no han cumplido con proveer documentación a tiempo y han complicado la labor del tribunal. No obstante, ese análisis también nos lleva a concluir que Ortiz Cosme ciertamente ha transgredido el deber de buena fe en la litigación, nos explicamos.

En la vista del 1 de diciembre de 2021, Ortiz Cosme señaló que estaría asumiendo capacidad económica de los gastos razonables de la menor, por lo que el tribunal les concedió unos momentos para discutir una posible estipulación de la pensión. Se estableció una pensión provisional y se le concedió un término a Molina Fonseca para presentar evidencia de los gastos de la menor. El 7 de febrero de 2022, Molina Fonseca, por derecho propio, representó al tribunal haber cumplido con la presentación de los gastos de la menor, por lo que solicitó que Ortiz Cosme cumpliera con la decisión de aceptar capacidad económica o no. Por su parte, Ortiz Cosme insistía que no podía decidir asumir capacidad económica, sin haber recibido los estados de cuenta de Molina Fonseca. Dichos estados de cuenta nada tenían que ver con la aceptación de capacidad económica, pues una vez un alimentante indica que aceptará capacidad económica, lo único pertinente es determinar los gastos razonables de la menor.

La reiterada e irrazonable petición de Ortiz Cosme de producir tres (3) años de estados de cuenta de Molina Fonseca, como condición para asumir capacidad económica, aun cuando Molina Fonseca reclamó no poder pagar los seiscientos dólares ($600.00) que costaba reproducir los mismos, entorpeció la labor del tribunal y causó una gran dilación de los procesos. Cabe resaltar que, Molina Fonseca propuso suplir dieciocho (18) meses de estados financieros correspondientes, a los cuales el banco no cobraba, pero Ortiz Cosme lo rechazó. Nos parece irrazonable y temeraria, el condicionar la aceptación de capacidad económica a la producción de estados de cuenta de los tres (3) años previos, de uno de los progenitores, sin aducir ni una sola razón de peso. A nuestro juicio, esa prueba no es pertinente porque la capacidad económica del alimentante solo requiere se prueben los gastos del alimentista. Esto tomando en consideración el carácter dinámico de la base para el establecimiento de una pensión justa. Parece ser que, lejos de considerar los gastos de la menor como el criterio principal para evaluar si asumiría capacidad económica o no, Ortiz Cosme se enfocó en descubrir el estado económico de Molina Fonseca. Criterio que es inconsecuente para tomar la decisión de aceptar capacidad económica o no. Poco importa el estado o condición económica de aquel progenitor que reclama a nombre del menor. Lo importante es la razonabilidad de los gastos reclamados. Contando con representación legal, Ortiz Cosme y, asumiendo el conocimiento de la representación legal de la doctrina de aceptación de capacidad económica, debemos entonces concluir que la obstinación en la producción de los estados financieros obedeció a una estrategia de litigio desafortunada, pues el efecto principal fue dilatar la pensión que la menor tenía derecho a recibir. Situación que no se debe permitir. Ha de quedar claro que, para decidir si se asume capacidad económica sobre los gastos de un menor, poco importa el estado económico del progenitor que le representa. Lo importante son los gastos del menor y

que estos sean razonables. Otra consideración podría ser el estado de vida que ese progenitor puede ofrecer al alimentista, pero no es pertinente el estado financiero del progenitor representante del menor. Permitir que un progenitor condicione su determinación de aceptar capacidad económica, a descubrir prueba de las finanzas del otro progenitor, es decir que se asume capacidad, si el otro progenitor de verdad no tiene recursos. Y eso es el objetivo del establecimiento de una pensión alimentaria de manera regular, no de un proceso donde se propone aceptar capacidad económica porque se desea asumir los gastos de sus hijos o, en la alternativa, porque no se desea que se investigue su verdadero estado financiero. Ortiz Cosme secuestró el proceso, aduciendo que asumiría capacidad económica, pero sujetando su noble intención, si así se le puede llamar, a descubrir las finanzas de Molina Fonseca. Tan es así, que condiciono la entrega de la PIPE actualizada, hasta conocer la información de Molina Fonseca, pues su aceptación de capacidad económica dependía de tal información. La representación legal de Molina Fonseca correctamente advirtió al tribunal de tal conducta y solicitó la imposición de honorarios por temeridad.

Por otro lado, en reiteradas ocasiones, Molina Fonseca pidió al foro representarse por derecho propio, a lo cual Ortiz Cosme vehemente se opuso. La temeridad desplegada llegó al extremo de oponerse a que Molina Fonseca se representara por derecho propio, llamando la atención al foro a la conducta desplegada por esta ante el tribunal, pero en total contradicción, el mismo día, el 22 de febrero de 2023 y, a pesar de alegar la incapacidad de Molina Fonseca para defenderse, pedir al tribunal que se le ordenara a Molina Fonseca ofrecer una oferta por escrito sobre la pensión alimentaria. Escapa a toda lógica, como si no estaba apta para representar por derecho propio los intereses de la menor, podía estar apta para hacer una oferta de transacción a nombre de esta.

Durante el proceso y, a pesar de estar pagando una pensión más baja que la finalmente acordada, fueron numerosas las veces que Molina Fonseca tuvo que pedir al tribunal que encontrara a Ortiz Cosme incurso en desacato por los continuos atrasos en el pago de la pensión provisional, a pesar de pagar quinientos sesenta y ocho dólares con dos centavos ($568.02) mensuales, más cincuenta y cuatro por ciento (54%) de gastos médicos. Obra en el expediente múltiples solicitudes de imposición de desacato a Ortiz Cosme por atrasos en el pago de la pensión alimentaria.

Para el 12 de mayo de 2022 se complicó el establecimiento de la pensión, cuando Molina Fonseca solicitó que la menor, quien hasta entonces había estudiado mediante homeschooling, se matriculara en la Bayamón Military Academy. Ortiz Cosme se opuso y presentó sus alternativas para la educación de la menor. A pesar de que el foro autorizó la matrícula de la menor en el colegio propuesto por Ortiz Cosme, este se tardó tanto en pagar la matricula, que no hubo cupo para la menor. En otra controversia educativa, Ortiz Cosme se oponía a que se matriculara a la menor en el Colegio Gedalias, aduciendo como razón, el alto costo de este, a pesar de que el Colegio Otoquí, recomendado por Ortiz Cosme, resultaba aún más caro.

En reiteradas ocasiones, Ortiz Cosme se comprometió a poner su deuda alimentaria al día pagando los atrasos, compromiso que incumplió en varas ocasiones. Ortiz Cosme condicionó su deber de cumplir con descubrimiento de prueba, según le conviniese, sujetando el mismo a una aceptación de capacidad económica a la adecuada presentación de los gastos de la menor. En fin, no nos queda duda que, en esta ocasión, la supuesta alegación de capacidad económica fue hecha de mala fe para dilatar y entorpecer los procesos.

En múltiples ocasiones tergiversó el estado procesal de los eventos, confundiendo al foro, mediante el replanteamiento de controversias que ya habían sido adjudicadas como la de los estados

financieros de Molina Fonseca. O incluso, oponiéndose al descubrimiento de prueba, alegando que este había concluido, a pesar de reconocer en moción alterna, del mismo día, solicitando término para, entre otros, dilucidar asuntos de descubrimiento de prueba pendientes. Cuestionó la deuda de cuatro mil doscientos noventa dólares con cincuenta y un centavos ($4,290.51), a pesar de conocer que se había estipulado la misma.

Las continuas mociones presentadas por parte de Ortiz Cosme obligaban a Molina Fonseca a asumir los costos de replicar a las mismas, asunto que fue advertido por esta. En una ocasión, Ortiz Cosme presentó cinco (5) mociones el mismo día. En algunas de dichas mociones se traían a destiempo reiteradamente asuntos que ya habían sido resueltos por el foro en su contra. En ocasiones, las mociones presentadas, inclusive por ambas partes, eran tantas que motivaron la suspensión de la vista ante la EPA, por la cantidad de asuntos pendientes de atención. Se solicitaba la suspensión de vista, el mismo día de la celebración de esta, por padecimientos físicos de la representación legal de Ortiz Cosme, que no denotaban sorpresa alguna que hubiese impedido informar al tribunal con tiempo suficiente para auscultar el beneficio de efectuar la vista de manera remota y que no se continuara dilatando la celebración de la vista final de alimentos.

Incluso Ortiz Cosme se negó por años a proveer sus estados financieros. Una vez el foro reiteró el deber de proveer los mismos, años después de iniciado el litigio, por primera vez, señaló el costo de obtener estos como impedimento para su presentación.

En otro acto completamente contradictorio, Ortiz Cosme solicitó *litis expensas* por veinticinco mil dólares ($25,000.00), a su favor. ¿Cómo puede este, entonces, encontrar una cantidad menor, los quince mil dólares ($15,000.00), impuestos en su contra, como irrazonable, que no sea por el único fundamento de que no fueron a su favor?, Argumento que, a este tribunal, no le merece ninguna consideración.

El pleito ante nuestra consideración era relativamente sencillo, el establecimiento de una pensión alimentaria para una menor de edad con una condición de salud. No presentaba complejidad alguna, pues la Ley Núm. 5, *supra,* y su reglamentación establecen claramente los criterios para el cálculo de esta. No obstante, la conducta procesal de Ortiz Cosme, el poco mérito de sus argumentos que, más que razonables en derecho, parecían destinados a ocasionar la dilación de los procesos y; el resultado del litigio, son suficientes criterios para avalar la imposición de honorarios por parte del foro primario. Nótese que este pleito comenzó en el 2019 cuando Ortiz Cosme solicitó una modificación de pensión de mil dólares ($1,000.00) mensuales, en ocasiones, mil doscientos cincuenta dólares ($1,250.00), dependiendo de las semanas del mes para acabar estipulando la misma pensión, que antes objetaba de mil doscientos cincuenta dólares ($1,250.00) al mes, más el setenta y dos por ciento (72%) de los gastos médicos no cubiertos por el plan; gastos extraordinarios escolares; gastos extraordinarios requeridos, ya sean de salud (que no sean los deducibles ordinarios), gastos escolares u otros y gastos extraordinarios electivos, ya sean de salud (que no sean los deducibles ordinarios), de educación u otros. De manera alguna, podemos concluir, como nos pide, Ortiz Cosme, que este fue la parte que prevaleció.

IV

Por lo antes expuesto, se confirma la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones